[Crim. No. 198. First Appellate District.—December 15, 1909.]

## THE PEOPLE, Respondent, v. M. B. LEAVENS, Appellant.

CRIMINAL LAW—OBTAINING MONEY UNDER FALSE PRETENSES—SALE OF FRAUDULENT MINING STOCK—CORROBORATION OF ACCOMPLICE.—In an action for obtaining money under false pretenses by a sale of fraudulent mining stock, where the bookkeeper of the mining corporation, as an accomplice, testified to a scheme by which the stock was fraudulently issued under a false name which defendant in-

dorsed upon it, under which defendant was to sell the stock and divide the proceeds with him, the testimony of the accomplice was sufficiently corroborated by the independent proof of the broker and his clerk, in whose office the stock was sold and the money paid, that the defendant presented the stock for sale under an assumed name, falsely representing that he had purchased it from the first holder, and that the name given by him was his true name, thus tending to connect defendant with the commission of the offense.

ID.—GENERAL RULES AS TO CORROBORATION OF ACCOMPLICE.—The independent evidence required to tend to connect the defendant with the commission of the offense, to corroborate an accomplice who has testified to a fraudulent scheme including the commission of the offense, need not be sufficient to establish the guilt of the defendant, irrespective of such testimony, but it is sufficient if it tends to implicate the defendant and connect him with the transaction and with the crime.

ID.—ABSENCE OF ACCOMPLICE FROM STATE—DEPOSITION AT PRELIMINARY EXAMINATION—DISCRETION.—Where the evidence shows without conflict that the accomplice at the time of the trial was not a resident of the state, and was not present at the trial, and could not be found at the place of his former address in this state, the court did not abuse its discretion in allowing in evidence his deposition taken at the preliminary examination.

ID.—TELEGRAM AND ANSWER—HARMLESS ERROR.—Conceding that a telegram to the witness out of the state and his answer thereto were hearsay, and not admissible to justify the admission of the deposition, the error in admitting the same was harmless, where there was evidence sufficient to justify the admission of the deposition regardless of the telegrams.

ID.—ABSENCE OF VARIANCE AS TO OBTAINING MONEY FROM STOCK-BROKER.—The averment in the information that the money obtained by false pretenses was procured from the stockbroker, to whom it was sold under false pretenses, and the proof that he procured the money by the written request of the broker by means of a check on the bank to pay the money to the defendant, which he obtained, does not show a variance requiring a reversal. The defendant obtained the money from the broker, no matter what means were used in conveying his money to the defendant.

ID.—DOUBLE AVERMENT AS TO OWNERSHIP OF MONEY AND INTENT TO DEFRAUD.—FAILURE OF PROOF AS TO ONE.—Where the information doubly averred that the money was the property of the broker, and of the mining company whose stock was fraudulently sold, and that the intent was to cheat and defraud both, the failure of proof as to the averment that the money belonged to the mining company was immaterial, where the evidence is clear that it was the property of the broker, and that the intent was to cheat and defraud him.

·

ID.—REQUESTED INSTRUCTION PROPERLY REFUSED—PRESUMPTION OF FRAUDULENT INTENT—FALSE PRETENSES KNOWN TO BE UNTRUE.—A requested instruction to the effect that a fraudulent intent is not to be presumed or inferred upon proof of fraudulent acts or pretenses, the party making them knowing them to be untrue, was properly refused.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Frank J. Murasky, Judge.

The facts are stated in the opinion of the court.

W. S. Barnes, and D. S. Truman, for Appellant.

U. S. Webb, Attorney General, and Charles H. Fairall, Campbell, Metson, Drew, Oatman & Mackenzie, *amici curiae,* for Respondent.

COOPER, P. J.—The defendant was charged in the information with the crime of obtaining $1,442.75 in lawful money of the United States from one Norwood on the sixth day of February, 1909, knowingly, designedly and by falsely and fraudulently representing to said Norwood that he, the defendant, was then and there the owner of $5,000 of the capital stock of the Sandstorm Mining Company, a corporation organized under the laws of the state of South Dakota and doing business in the state of Nevada.

The jury returned a verdict of guilty as charged, whereupon judgment was entered to the effect that defendant be imprisoned in the state prison at San Quentin for the term of eighteen months. He made a motion for a new trial, which was denied, and this appeal is from the judgment and the order.

It is not claimed that there is an insufficiency of evidence in the record to sustain the verdict, but it is contended—and is the main contention here—that there is not sufficient evidence outside of the evidence of one Chaney, an accomplice, to justify the verdict.

The evidence of Chaney is to the effect that in February, 1908, he was the bookkeeper of the corporation, and resided in the town of Goldfield, in the state of Nevada, where

the corporation was doing business, to wit, mining, and that the defendant also lived in the said town; that he and defendant entered into an agreement, or conspiracy, whereby he, as such clerk or bookkeeper, was to take up canceled certificates of stock of said corporation to the amount of $5,000, and issue new certificates in lieu thereof, and by certain false statements to procure the signatures of the president and of the secretary of the corporation to said fraudulent certificates, and then affix the seal of the corporation thereto; that defendant should then take these said fraudulent certificates to San. Francisco and sell the same, the proceeds to be divided equally between the two; that the witness did procure the issuance of said certificates for five thousand shares of said stock, and procured the names of the president and of the secretary thereto, and when so issued affixed the seal of the corporation in the proper place; that at the suggestion of the defendant the stock was issued in the name of J. C. Culver, and that defendant indorsed the name of J. C. Culver on the back of the certificates; that witness did not know anyone by the name of J. C. Culver; that there was no consideration paid for said certificates, and that they were issued without the knowledge or consent of the board of directors, the president or any officer of the corporation. The said certificates were then delivered to defendant and he immediately left for San Francisco.

It appears from the evidence of Norwood, who was a stock broker doing business in San Francisco, and of Simpson, his clerk, in effect that about February 6, 1908, the defendant came into the office of Norwood and desired to sell the stock, introducing himself under the fictitious name of Stewart; that Norwood asked defendant how he came by the stock, and defendant replied as follows: "He said he had a five thousand share certificate that he had bought when the stock was low, and had sent it up to a friend of his, a Mr. Culver, to have it cut up into one thousand share pieces so that he could sell it more easily. Mr. Culver for some reason had put it in his own name and indorsed it and sent it down to him. . . . I asked him if he knew this was Mr. Culver's signature, and he said he did. I asked him if he was ready to witness it, and he said he was, and he signed it in my presence and the presence of Mr. Simpson 'A. F. Stew-

art.' . . . I asked him if he knew Mr. Culver's signature and would witness it, and he said he did and would witness it, and thereupon signed the five certificates. . . . Defendant wrote the signature 'A. F. Stewart' which appears on the back of the check in my presence, and at the time I gave him the check the words 'sig. O. K.' were placed there in my presence by my clerk, Mr. Simpson. This was done at Mr. Leavens' request. He said he was unacquainted, and wanted to know how he could get his money for the check.''

The witness further testified that he gave the defendant a check for $1,442.75 on the Bank of British North America, where his bank account was kept; that this check was made payable to ''A. F. Stewart,'' and indorsed by defendant ''A. F. Stewart,'' and was paid by the bank and charged to the account of Norwood; that he believed and relied on the representations of defendant that he was the owner of the stock, that his name was A. F. Stewart, and acting upon such belief he paid the defendant for the stock. That he subsequently bought other stock which was genuine, and delivered such genuine stock to his customer in lieu of the stock purchased of defendant.

The record fails to show why Norwood purchased other stock, or by what means he knew or discovered that defendant was not the real owner of the five thousand shares which he had purchased from defendant. In fact, there is no evidence that defendant was not the owner of the five thousand shares at the time he sold them to Norwood except the evidence of Chaney, the accomplice, as hereinbefore stated. It seems that the district attorney or prosecuting officer might easily have procured other testimony if it existed to show that the stock was not issued by the authority of the corporation or that it was fraudulent; but we must take the record as we find it, and determine whether or not the evidence other than the evidence of the accomplice tends to connect the defendant with the commission of the offense charged.

Our code (Penal Code, section 1111) provides: ''A conviction cannot be had on the testimony of an accomplice unless he is corroborated by other evidence which in itself, without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense; and the

corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.''

The crime charged here is obtaining money by false pretenses. It was necessary for the prosecution to prove that defendant obtained the money, and not only that he obtained the money, but that he obtained it upon the representation that he was the owner of the stock which he sold to Norwood, and that such representation as to his ownership was false. The evidence of Norwood and of his clerk Simpson clearly shows that defendant obtained the money from Norwood; that he obtained it by representing himself to be the owner of the stock. He further represented and stated that his name was Stewart and signed such name to each of the five certificates of stock. He had the stock in his possession purporting to be indorsed by J. C. Culver. The accomplice Chaney in his testimony said that he delivered the stock to defendant, and that defendant indorsed the name of Culver on the certificates. It was part of the plan and a part of the conspiracy that defendant should come to San Francisco and dispose of the stock. Now, it is evident from the very inception of the general plan that money was to be obtained from someone by a false representation. It began in Goldfield, Nevada, by Chaney willfully procuring the certificates from the corporation with the consent and acquiescence of the defendant. The name of Culver was used at the suggestion of defendant. The defendant indorsed the name of Culver on the back of the certificates. He came to San Francisco as a part of the plan to dispose of the stock. The crime was commenced in Nevada, and every step from the first conversation between defendant and the accomplice up to the final act of obtaining the money was tainted with fraud. Every act, no matter whether performed by Chaney or by defendant, was in furtherance of the common design and in aid of the common purpose. The fact that defendant had the stock in his possession tended to connect him with the crime. The fact that he wrote the name of Stewart instead of his true name tended to connect him with the crime. Honest men do not introduce themselves under an alias and sign fictitious names to muniments of title to property. There is not a word to contradict the evidence of Chaney as to why the certificates of stock were purloined.

The transactions which followed, as narrated by Norwood and his clerk, tend to connect the defendant with the commission of the offense. The actual commission of an offense may be established by the evidence of the accomplice, but the law, in order to protect innocent men from being convicted, provides that the evidence of the accomplice alone shall not be sufficient to justify a conviction, but that there must be other independent evidence which "tends to connect the defendant with the commission of the offense." The evidence outside of that of the accomplice need not be sufficient to establish the guilt of the defendant, but it must in some way tend to implicate the defendant and connect him with the transaction and with the crime. This is sufficient. (*People* v. *Ames*, 39 Cal. 404; *People* v. *Kunz*, 73 Cal. 313, [14 Pac. 836]; *People* v. *Barker,* 114 Cal. 617, [46 Pac. 601]; *People* v. *Bunkers*, 2 Cal. App. 197, [84 Pac. 364, 370].)

It is next claimed that the court erred in admitting in evidence the deposition of Chaney taken at the preliminary examination, for the reason that it was not made to appear that he could not with due diligence be found within the state and produced at the trial. The evidence shows without conflict that Chaney was not a resident of the state, that he was not present at the trial, that he could not be found, or had not been found, at his former address in Oakland. In such case much is left to the discretion of the trial court based upon all the facts and circumstances, and it is only in case of an abuse of such discretion that this court would be justified in reversing a criminal case where the judgment was otherwise correct. (*People* v. *Witty,* 138 Cal. 576, [72 Pac. 177]; *Renton* v. *Monnier,* 77 Cal. 450, [19 Pac. 820]; *People* v. *Melendrez,* 4 Cal. App. 399, [88 Pac. 372].) Conceding that the telegram sent to Chaney at Kansas City, Missouri, and his answer thereto, were hearsay and not admissible as preliminary to the introduction of the deposition, the error was harmless. There was sufficient evidence as to the residence of Chaney without the state, and the fact of his not being present, to justify the court's action in admitting the deposition regardless of the telegram.

There is no variance between the allegations of the information and the proof. The allegation is that the defendant procured money from Norwood, and the proof is that he did

procure money, but it was procured by the means or use of a check or written request which Norwood made upon the bank for the payment of the money. There may be a difference between getting money directly by handing the coin over in hand and giving a request in writing to a third party who complies with the request and hands it over, but the effect is the same, and the distinction is highly technical. An appeal that depends upon such question for reversal is devoid of merit. The defendant obtained the money, and obtained it from Norwood, no matter what means were used in finally conveying the money from Norwood to the defendant. (*People* v. *Whalen,* 154 Cal. 472, [98 Pac. 194].)

Nor is there any merit in the contention that the evidence does not show that the money obtained was the property of the Sandstorm Mining Company. The information states that the money was the property of Norwood and of the Sandstorm Mining Company, and that the intent was to cheat and defraud both; but it was sufficient to prove that the money was the property of one of the parties named, to wit, of Norwood, and that the intent was to cheat and defraud Norwood. (*People* v. *Hines,* 5 Cal. App. 122, [89 Pac. 858]; *People* v. *Gibbs,* 98 Cal. 664, [33 Pac. 630].)

It is claimed that the court erred in refusing the defendant's requested instruction numbered 1, which reads as follows: "The jury is instructed that in this case, as in case of all other crimes, the burden of proving every element of the crime beyond a reasonable doubt is on the state, and that a fraudulent intent is not to be presumed by you on the part of the defendant in this case if you should find that this defendant did make to H. H. Norwood false pretenses as alleged in the information here, and even if you should find that at the time the defendant knew such pretense or pretenses to be false and untrue." The instruction is to the effect that a fraudulent intent cannot be presumed or inferred upon proof of fraudulent acts or pretenses, the party making such pretenses knowing them to be untrue. If a fraudulent intent cannot be presumed or inferred from such proof, it is difficult to understand how it can be proved. The intent was to be presumed from the facts, and it would be difficult to understand how the intent could be proven in any other way

except by proving the facts which would raise a reasonable inference as to the intent.

Other instructions are complained of, but the objections to them are equally devoid of merit. The defendant appears to have had a fair trial, and the instructions of the court as given were full and clear, and covered all the material issues in the case.

The judgment and order are affirmed.

Hall, J., and Kerrigan, J., concurred.