[Crim. No. 1477.   Second Appellate District, Division Two.—May 25, 1927.]

THE PEOPLE, Respondent, v. CARL H. MARKS et al., Defendants; GLADYS NICHOLS, Appellant.

[1] CRIMINAL LAW—CONSPIRACY—INFORMATION—SEPARATE COUNTS—SINGLE TRANSACTION.—An information charging in one count conspiracy to commit the crime of extortion as defined by section 518 of the Penal Code, and, in a second count, conspiracy to falsely move and maintain a suit, action, and proceeding by doing substantially the same acts as were set forth in the first count, involved a single transaction and charged the commission of but one offense.

[2] ID.—INFORMATION IN TWO COUNTS CHARGING SINGLE CONSPIRACY—PROBATION — IMPRISONMENT — UNAUTHORIZED SENTENCE.—On conviction under an information containing only a single charge of conspiracy in two counts, the trial court has no authority to grant probation to defendant on one count and at the same time to sentence her on the other count to a term of imprisonment in the county jail.

[3] ID.—PLEADING—JUDGMENTS.—Where the trial court after conviction under two counts of an information containing only a single charge of conspiracy granted probation to defendant, and at the same time sentenced her to a term of imprisonment in the county jail, the result was as though no judgment had been rendered.

[4] ID.—ERRONEOUS JUDGMENT—HABEAS CORPUS.—Although the trial court, on conviction of defendant of what was a single charge of conspiracy in two counts, erred in granting probation to defendant on one count and at the same time sentencing her to a term of imprisonment in the county jail on the second count, defendant was not, by reason of such error, entitled to release on *habeas corpus*.

[5] ID.—CONSPIRACY—PARTICIPATION IN CRIME—EVIDENCE—FINDINGS—VERDICT.—In this prosecution for conspiracy to commit extortion and to falsely maintain an action, the finding that defendant was an active participant in the crime and the verdict of conviction were justified by the evidence.

1.   Joinder of two or more offenses in one indictment, note, 58 Am. Dec. 238.   See, also, 14 Cal. Jur. 66; 14 R. C. L. 196.

2.   See 8 R. C. L. 233.

4.   See 13 Cal. Jur. 281; 8 R. C. L. 237, 239.

[6] ID.—CREDIBILITY OF WITNESSES—PROVINCE OF JURY.—The jury is the sole judge of the credibility of witnesses.

[7] ID.—WITNESSES—EXAMINATION BY DISTRICT ATTORNEY—FAILURE TO ASSIGN MISCONDUCT—INSTRUCTIONS—APPEAL.—In such prosecution, where defendant failed to assign the asking of questions by the district attorney as misconduct, and did not request the trial court to instruct the jury to disregard the questions or to admonish the district attorney to refrain from such further practices, and did not show that the questions were asked in bad faith, the alleged misconduct of the district attorney will not be reviewed by the appellate court.

[8] ID.—REDIRECT EXAMINATION—ABSENCE OF MISCONDUCT.—In such prosecution, a question propounded to a state's witness by the district attorney on redirect examination as to whether a certain person, who had been brought into the record by defendant on cross-examination, was not a thief and if he were not under arrest for a shooting affray, did not constitute prejudicial misconduct on the part of the district attorney, where the court excluded the question and admonished the jury to disregard it, and it was not shown to have been asked in bad faith.

[9] ID.—CROSS-EXAMINATION BY DISTRICT ATTORNEY—INFERENCES—ABSENCE OF MISCONDUCT.—In such prosecution, cross-examination by the district attorney of defendant as to whether she had lived in certain apartments under her own name, which was excluded by the court on objection that it was irrelevant, incompetent, and immaterial, did not constitute misconduct by the district attorney as raising an inference that defendant lived there under a different name.

[10] ID.—ATTEMPT BY DISTRICT ATTORNEY TO PROVE FLIGHT—ABSENCE OF MISCONDUCT.—In such prosecution, cross-examination of defendant by the district attorney as to whether she had hid in a dressing-room when the officers came, to prove flight, did not show misconduct by the district attorney, where defendant made no suggestion that the examination was unfair or improper, and the court sustained objections to all offers of such proof and admonished the jury not to consider same.

[11] ID.—MISCONDUCT OF DISTRICT ATTORNEY—FAILURE TO MAKE OBJECTION—APPEAL.—Objections must be made to prejudicial misconduct of the district attorney as a basis for complaint in the appellate court.

6. Credibility of witnesses, note, 86 **Am. Dec.** 328. See, also, 27 **Cal. Jur.** 182, 186; 28 **R. C. L.** 656.

8. See 8 **Cal. Jur.** 508.

11. See 8 **Cal. Jur.** 509; 22 **R. C. L.** 104.

[12] ID. — ACCOMPLICE — INSTRUCTIONS. — In such prosecution, instructions that whether or not one is an accomplice is for the jury to determine from all the testimony and that a conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect defendant with the commission of the offense contained a correct statement of the general principles of law as to corroboration of accomplices and were not misleading, although the instructions could have been omitted in view of succeeding instructions that a particular witness was an accomplice.

[13] ID.—CORROBORATION—OTHER INSTRUCTIONS.—In such prosecution, instructions that a state's witness was to be considered as an accomplice and that her testimony must be corroborated by other testimony connecting defendant with the crime to authorize conviction were not erroneous, in view of other instructions.

---

(1) 31 C. J., p. 776, n. 83. (2) 16 C. J., p. 1278, n. 93. (4) 29 C. J., p. 53, n. 33. (5) 12 C. J., p. 638, n. 80. (6) 16 C. J., p. 930, n. 93. (7) 17 C. J., p. 62, n. 94. (8) 16 C. J., p. 893, n. 7. (9) 16 C. J., p. 891, n. 83. (12) 16 C. J., p. 1001, n. 98. (13) 16 C. J., p. 1053, n. 93.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Elliot Craig, Judge. Reversed.

The facts are stated in the opinion of the court.

A. D. Orme for Appellant.

U. S. Webb, Attorney-General, and John L. Flynn, Deputy Attorney-General, for Respondent.

MURPHEY, J., *pro tem.*—The information filed by the district attorney of the county of Los Angeles in this case contained two counts, count one charging the defendants with conspiring to commit the crime of extortion and count two charging the defendants with conspiring to falsely maintain an action or suit. After a trial had on the information, the jury returned a verdict finding the defendant Nichols guilty under each count of the information and thereafter the court pronounced judgment granting her probation for five years on count one, and sentencing her to the county jail of Los Angeles County for the term of two years on count two. From said judgment and order of the trial court

denying her motion for a new trial the defendant Gladys Nichols prosecutes this appeal.

It is the contention of the defendant, first, that the information, although containing two counts, charges but one offense; second, that the evidence introduced by the prosecution is insufficient as a matter of law to sustain the conviction of this defendant upon either count of the information; and third, that the instructions given by the trial court are so inconsistent and confusing that it is impossible to determine which of the instructions was followed by the jury and applied to the evidence in the case.

[1] In so far as the first point is concerned, involving the law of the case, the matter was before the first division of this court in *In re Nichols*, 82 Cal. App. 73 [255 Pac. 244]. In that matter it was "the contention of the petitioner that the order made by the trial court on the so-called first count of the information, in granting probation to the petitioner the court exhausted its jurisdiction" (inadvertently stated by the court as "exceeded" its jurisdiction) "and that the sentence imposed upon the petitioner under the second count of the information was in excess of the jurisdiction of said court and consequently was a nullity." In an exhaustive opinion written by Mr. Justice Houser the court determined these issues and we are entirely satisfied with the reasoning and conclusion of the court in that opinion, and adopt the same as the law of this case on the matters therein adjudicated. The opinion states: "In the first count of the information as hereinbefore set forth, petitioner was charged with the crime of conspiracy to commit the crime of extortion in that she and two other persons named therein 'did wilfully, unlawfully and feloniously, wickedly and fraudulently conspire, combine, confederate and agree with Carl H. Marks and Hilda E. Daws, and each with the other, to commit a felony, to-wit, the crime of extortion, in the county of Los Angeles, State of California; that thereafter, and in the furtherance of the conspiracy aforesaid, the said defendant Gladys Nichols, together with Carl H. Marks and Hilda E. Daws, did call up the said R. J. Johnson on the telephone and make an appointment for a demonstration of an automobile, and did go out with said R. J. Johnson for a demonstration, and did rent a room in the Crawford Apartments at number 941

South Georgia Street, in which the said R. J. Johnson was to be trapped with Hilda E. Daws; and did make an appointment with the said R. J. Johnson to go to said room with Hilda E. Daws; and did watch the said Hilda E. Daws and R. J. Johnson go up to said apartment, and did thereafter enter the said room and surprise the said R. J. Johnson therein in company with the said Hilda E. Daws; and did demand money from the said R. J. Johnson; and did threaten to sue the said R. J. Johnson for alienation of affections, and did hire and employ an attorney for the purpose of suing the said R. J. Johnson, and for the purpose of thereby and therein, as aforesaid, of extorting and obtaining money from the said R. J. Johnson; contrary to the form, force and effect of the statute etc.' . . . Without setting forth the language of the second count of the information, it may suffice to state that thereby petitioner was charged with the commission of the crime of conspiracy to falsely move and maintain a suit, action and proceeding by doing and performing substantially the same acts as were set forth in the first count, together with the additional allegation that petitioner and her confederates 'did falsely pretend and represent that Carl H. Marks was married to Hilda E. Daws, and did thereby and therein conspire to falsely maintain a suit for alienation of the affections aforesaid.' The act alleged to have been committed by the defendant in the first count of the criminal action by which a conspiracy to commit one criminal act was charged was therefore substantially restated in the second count by which the defendant was charged with having committed a different offense. The only difference between the allegations in the two counts was that in the second count the falsity of the pretension of the conspirators that Hilda E. Daws was the wife of Carl H. Marks was alleged, which allegation was omitted from the first count.''

After quoting from section 518 of the Penal Code defining extortion, and from *People* v. *Schmitz,* 7 Cal. App. 330 [15 L. R. A. (N. S.) 717, 94 Pac. 407, 419], *People* v. *Sanders,* 188 Cal. 744 [207 Pac. 380], and *People* v. *Johnson,* 22 Cal. App. 362 [134 Pac. 339], the court concludes: ''With reference to the two counts in the information in this case here being considered, it is clear that the basis therefor was a single transaction and involved but one conspiracy. In

the case of *United States* v. *Weiss*, 293 Fed. 992, in which
one of the questions before the court was that of the right
of the prosecution to charge several different criminal of-
fenses where they arose out of one conspiracy, the following
language appears: 'At the threshold it must be noted that
the government cannot split up one conspiracy into differ-
ent indictments, and prosecute all of them, but that prosecu-
tion for any part of a single crime bars any further prose-
cution based upon the whole or a part of the same crime.'
(*Murphy* v. *United States* (C. C. A.), 285 Fed. 804, at
p. 816; *In re Snow*, 120 U. S. 274 [30 L. Ed. 658, 7 Sup.
Ct. Rep. 556, see, also, Rose's U. S. Notes] ; 16 Cor. Jur. 270,
and cases there cited.)'' The court further fortifies its con-
clusion by citations from the case of *People* v. *Frank*, 28 Cal.
507, *People* v. *Powell*, 50 Cal. App. 436 [195 Pac. 456],
*People* v. *Jailles*, 146 Cal. 301 [79 Pac. 965], and *People*
v. *Elgan*, 116 Cal. 287 [48 Pac. 120], and concludes that
"assuming that the authorities hereinbefore cited satisfac-
torily establish the conclusion that but a single transaction
was involved in the aggregate of the allegations contained
in both the first and the second counts of the information,
and that the defendant therein was legally charged with the
commission of but one offense, the question of the effect of
the action of the trial court in granting the defendant pro-
bation as to the 'first count' and sentencing her to state
prison on the 'second count' remains for consideration.''
(It is to be noted that the statement that the defendant was
sentenced to state's prison was inadvertently made as the
judgment of the trial court was that the defendant should
be imprisoned in the county jail of Los Angeles County.)

[2]   On the second phase of the case the first division of
this court quotes from the case entitled *In the Matter of the
Application of Cyril J. O'Connor*, 80 Cal. App. 647 [252 Pac.
730], the case entitled *In re Fink*, 79 Cal. App. 659 [250
Pac. 714], and *People* v. *Mendosa*, 178 Cal. 509 [173 Pac.
998], from which latter case the court quotes as follows:
"In the Mendosa case (178 Cal. 509 [173 Pac. 998]) the
judgment of the trial court was that the defendant be im-
prisoned in the state prison; that the sentence be suspended
and the defendant remanded to the custody of the sheriff
and confined in the county jail until the further order of the
court; and while it was held therein that such a judgment

was illegal in that there was no authority in law for the action of the court in suspending the execution of the sentence and at the same time remanding the defendant to the custody of the sheriff to be confined in the county jail, and consequently that such judgment should be reversed, it was also ruled that the defendant was not entitled to a new trial by reason of such error, but that the trial court should again arraign defendant for judgment and thereupon proceed to pronounce a proper judgment on the conviction legally obtained. The error, therefore, was not fatal in the sense that it was prejudicial to the substantial rights of the defendant. It did not have the effect of exhausting the jurisdiction of the trial court so as to prevent it from pronouncing a new or different judgment. And so in the case under consideration; it is manifest that on a conviction on what we have held was a single charge of conspiracy, the trial court had no authority to grant probation to the defendant and at the same time to sentence her to a term of imprisonment in the state prison. The court might have done either the one thing or the other, but clearly not both of them. Like the judgment in the Mendosa case, the defendant could not be under a sentence to the state prison and at the same time be either released on probation or remanded to the custody of the sheriff to be confined in the county jail. **[3]** The two respective conditions of the judgment are so opposed one to the other that neither is capable of enforcement without doing extreme violence to, if not destroying, the other. The result is as though no judgment had been rendered. **[4]** However, reasoning from the decision in the Mendosa case, we are constrained to hold that the error committed by the trial court should not avail to the end that the release of the petitioner should be ordered. As is said in the *Matter of Smith,* 152 Cal. 566, 567 [93 Pac. 191, 192] : 'It does not by any means follow that the prisoner must be discharged if the judgment and commitment are void. . . . The contention on the part of the prisoner that the sentence pronounced . . . is utterly void for the purpose of committing him to the state prison, but is nevertheless valid for the purpose of vacating the bench-warrant, and ending the felony case, is illogical in the last degree, and finds no support in the decisions which he cites.' The intention of the trial court in the premises

is perfectly clear, and petitioner has suffered nothing so far as her substantial rights are concerned by reason of the error on which the petition is predicated . . . it is ordered that the writ be discharged; and that the petitioner be and she is remanded to the custody of the sheriff of the county of Los Angeles, with directions to the superior court to arraign petitioner for judgment and thereupon to proceed in the manner required by law.''

Adopting the foregoing as the judgment of this court on the questions of law involved in the discussion, we come to the remaining issues raised by the appellant on this appeal; first, the insufficiency of the evidence as a matter of law to sustain the conviction of the defendant on either count; second, errors of law occurring at the trial; third, confusing and inconsistent instructions; and, fourth, misconduct of the district attorney.

[5] We are satisfied from a careful examination of the record that the evidence amply justified the verdict. Indeed, if the testimony of Hilda Daws, an accomplice, is sufficiently corroborated, the evidence as to the guilt of the defendant is overwhelming. We think that the court fully and correctly instructed the jury upon all matters of law involved in the case, and that there is no merit in appellant's contention that the conviction was not good either in law or in fact. If the jury believed the witnesses for the prosecution, and evidently they did, there was ample evidence to support a verdict of guilty as against the appellant. There is no doubt but that the conspiracy was formed and that the perpetrators intended to hold up the complaining witness Johnson for a large sum of money. The People called Hilda Daws, one of the alleged conspirators, as a witness for the prosecution, and it is on this phase of the case that the major contention of the appellant is predicated, it being her contention that Hilda Daws was an accomplice, with which we fully agree, and that her testimony was not sufficiently or at all corroborated. We have carefully examined the testimony in the case and are satisfied that the facts and circumstances are such that a finding that the appellant was an active participant at every stage in the proceedings might fairly be augmented by the statement that she was the brains of the enterprise. There is ample evidence in the record to show these facts: That the appellant

had known the complaining witness Johnson for several years prior to the birth of this attempted holdup; that she had been a witness in a divorce action between Johnson and his wife; that he had several business transactions with her in the way of money loans; that neither of the other conspirators had ever known Johnson personally and such information as they acquired came from the appellant; that someone telephoned to Johnson to meet Hilda Daws for the purpose of demonstrating an automobile (and as the appellant was the only one who personally knew Johnson, it would seem that it would be a fair inference that she did the telephoning); that Johnson, in response to this telephone message, did meet Hilda Daws and demonstrated an automobile with the view of selling the same to her; that the appellant and Hilda Daws lived together and were intimate friends and associates for six weeks prior to the time of the attempted holdup; that they lived three weeks at the McKenzie Hotel, two weeks at an apartment house on Coronado Street and from there went to the apartment house at 1213 Shatto Street, at which place they were residing at the time of the commission of the offense set out in the information; that the co-defendant and co-conspirator Marks had been on terms of friendly intercourse with the appellant and Hilda Daws for many weeks prior to the thirteenth day of September, the date upon which Johnson was taken by Hilda Daws to the Crawford Apartments; that he visited with the two women daily, and several times each day; that the appellant had resided at the Crawford Apartments where Johnson and Hilda Daws were trapped by Marks during the months of April and May of the same year; that she was the only one of the conspirators who had ever lived at or known of the Crawford Apartments; that Hess, who was employed by Marks to prosecute the suits contemplated by the conspirators, was the attorney for the appellant and had attended to business for her long prior to and up to the date of the trapping; that he had never served either Marks or Hilda Daws, and that Marks had never known of his existence. There is evidence that Mrs. Daws had visited Hess' office with the appellant on some prior occasion. The evidence shows that the day after the trapping of Johnson, Marks went to Hess' office and was followed by the appellant and Hilda Daws. Marks denies that

he was at the office when the women were there but this is disputed by Hess. At this meeting with Hess, the appellant and Hilda Daws were in his private office while Marks sat in the anteroom; Marks denied that he saw the women and the appellant states that she has no recollection of seeing Marks there. While the appellant and Mrs. Daws were in the inner office Hilda Daws was questioned by Hess as to her relationship with Marks and as to the facts occurring at the Crawford Apartments; the appellant testified that she paid no attention to the conversation but was writing a letter. Attorney Hess says she was present during the whole time and that he did not observe that she was writing any letter and was within hearing of the conversation. The appellant had admittedly been informed of the meeting between Johnson and Hilda Daws at the Crawford Apartments on the night before; admittedly she knew that Hilda Daws was not the wife of Marks. In the interview with Hess, Hilda Daws had informed him in the presence of the appellant that she was the wife of Marks and gave the time and place of her marriage to him. At the conclusion of this interview in Hess' office Hilda Daws departed and left the appellant and Hess alone, at which time they discussed their business affairs. At this interview between the appellant and Hess in his private office the appellant did not give him any information as to the criminal designs of Marks and Hilda Daws, although at the time she knew that the statements of Hilda Daws were untrue as to her marriage with Marks and she knew that there had been an attempted holdup of Johnson at the Crawford Apartments. Parenthetically it may be said that this of itself is sufficient grounds for a reasonable inference that she was a party to the unholy alliance. The testimony shows that she had degrees from two universities, was an educated woman, and it would seem incredible that, unless she was thoroughly saturated with the criminal instinct, she should have silently sat by and tolerated the prosecution of this nefarious scheme against Johnson. There is this further testimony and circumstance in connection with this matter: After the arrest of the appellant and Hilda Daws, a conversation was heard in the county jail between these women by another inmate of this institution, Hazel Leininger. The three women were in attendance on a Sunday evening party in

the county jail. The witness Hazel Leininger said: "Mrs. Nichols asked Mrs. Daws if she had signed any confession and Mrs. Daws says, 'No, why?' Mrs. Nichols said: 'Don't sign any confession or let them know I know anything about this and I can get out and then I can get you out in about ten days.' " No good purpose would be served in quoting *verbatim* the testimony set out in the above recital. Suffice it to say that there is testimony to support every recital of fact from witnesses other than Hilda Daws. [6] Some of this testimony was contradicted,—an immaterial circumstance, as the jury was the sole judge of the credibility of the witnesses. In view of this recital, and it is not exhaustive of all of the facts that might be gleaned from the record, and in view of the well-settled state of the law as to the *quantum* of evidence required to corroborate an accomplice, we feel that there is no merit in the contention of the defendant as to the alleged insufficiency of the evidence. In the case of *People* v. *Kelly,* 69 Cal. App. 558 [231 Pac. 767], the court says: "It is conceded by the respondent that Talbott was an accomplice of defendant Kelly—the only question in regard to appellant's contention being as to the sufficiency of the corroborating evidence. Talbott testified fully regarding the commission of the offense by himself, aided and abetted by defendant Kelly, and two witnesses gave evidence of Kelly's admission after his arrest, in substance that he received a part of the money which was embezzled, and that if permitted to do so he would 'phone to some of his friends and would be able to procure the money to clear up the shortage.' An early case (*People* v. *Ames,* 39 Cal. 403) lays down certain illuminating principles with reference to the construction which should be placed upon the statute in question. Among other things, it is there pointed out that even if such evidence raised 'a suspicion of the guilt of the accused' the demands of the statute would be met. But that doctrine has since been repudiated, and it may now be regarded as settled law that the corroborating evidence will not be sufficient if it be of no greater strength than to justify a mere suspicion of defendant's guilt. (*People* v. *Thompson,* 50 Cal. 480; *People* v. *McLean,* 84 Cal. 482 [24 Pac. 32]; *People* v. *Sternberg,* 111 Cal. 3 [43 Pac. 198]; *People* v. *Barker,* 114 Cal. 620 [46 Pac. 601]; *People* v. *Bunkers,* 2 Cal. App. 205 [84 Pac. 364, 370].)

On the other hand, it is not necessary that such incriminating evidence be corroborative of each and every fact testified to by the accomplice; all that is required is that, standing alone, it tends to connect the defendant with the commission of the offense. The corroboration may be slight (*People* v. *Melvane*, 39 Cal. 616), and of itself entitled to but little consideration (*People* v. *McLean*, 84 Cal. 482 [24 Pac. 32]) ; it is not required that it be absolutely convincing; nor need it extend to every fact and detail covered by the statements of the accomplices. (*People* v. *Bunkers*, 2 Cal. App. 205 [84 Pac. 364, 370].) 'It need not be strong; it is sufficient if it tends to connect the defendant with the commission of the offense, though if it stood alone it would be entitled to but little weight (citing case). Nor need it extend to every fact and detail covered by the statement of the accomplice. (*People* v. *Kunz*, 73 Cal. 313 [14 Pac. 836] ; *People* v. *Cloonan*, 50 Cal. 449.)' (*People* v. *Barker*, 114 Cal. 620 [46 Pac. 601].) Neither need it 'be evidence tending to establish the precise facts testified to by the accomplice.' (*People* v. *Cloonan*, 50 Cal. 449.) To the same effect, see *People* v. *Garwood*, 11 Cal. App. 665 [106 Pac. 113] ; *People* v. *Leavens*, 12 Cal. App. 178 [106 Pac. 1103] ; *People* v. *Martin*, 19 Cal. App. 295 [125 Pac. 919]. Clearly a confession by the defendant on trial would be a sufficient corroboration. (*People* v. *Tobin*, 39 Cal. App. 76 [179 Pac. 443] ; *People* v. *Richardson*, 161 Cal. 552 [120 Pac. 20]; *People* v. *Josselyn*, 39. Cal. 393, 400.) It is held in the case of *People* v. *Armstrong*, 114 Cal. 574 [46 Pac. 611], that an admission by the defendant which showed his criminal connection with the commission of the offense was all the corroboration that was required. To the same point is the language in *People* v. *Richardson*, 161 Cal. 552, 563 [120 Pac. 20], where it is said: 'Her evidence was sufficient proof of the *corpus delicti* to warrant the introduction of evidence of admissions or confessions on the part of defendant for purposes of the necessary corroboration.' In the Armstrong case• the admissions made by the defendant were far from amounting to a confession of guilt; indeed, in many respects they were susceptible of an interpretation which would show his innocence of guilty intent. Notwithstanding such fact, the court held it to be a sufficient corroboration of the testimony of the accomplice. The defendant in

the instant case did not make a full confession. What he did say was in effect that he had received a part of the stolen funds, and that if given an opportunity he would 'clear up the shortage.' Bearing in mind that an admission is sufficient; that it need not be strong, but, to the contrary, that it may be slight; that if standing alone it might be entitled to but little weight; and that it need not extend to every fact testified to by the accomplice. We are constrained to hold that the requirements of the statute were fulfilled in that the admission of the defendant tended to connect him with the commission of the offense."

[7] The appellant's next contention is based upon the acts of alleged misconduct on the part of the district attorney during the progress of the trial. Several instances are cited wherein it is contended improper and prejudicial questions were asked by the district attorney. In no instance did appellant assign the asking of any question as misconduct nor did she request the trial court to instruct the jury to disregard the questions or admonish the district attorney to refrain from such further practices. Furthermore it is not shown by the appellant nor does the appellant indicate that the questions were asked in bad faith. In view of the well-settled law in this state that in the absence of such assignment and request the appellate courts will not go into the matter of misconduct of prosecuting officers, we might properly leave the matter at this point. In deference to the exhaustive discussion of this matter and the patient industry exhibited by counsel in presenting it to the court we shall consider some of the assignments of misconduct presented by him. [8] During the cross-examination of Hilda Daws the appellant endeavored to establish as a fact that she, the appellant, had placed in the hands of one Brody, a friend, associate, and acquaintance of the alleged conspirators, her diamonds, in order that he might procure a loan on them. On redirect examination the district attorney asked the witness if this was the "same Brody now under arrest for shooting up the Haney girls and isn't he a thief and an associate of thieves?" Mr. Eddy, counsel for appellant: "The only reason I want to object to that is I am afraid on account of its immateriality, I won't have a chance to cross-examine so I will have to object but if the court will let me cross-examine I won't object at all." The

court: "I am more inclined to sustain the objection and admonish the jury that Brody is not on trial here." Mr. McIsaac, deputy district attorney: "I withdraw the question." The appellant brought Brody into the record and it does not appear that the redirect examination was or could be construed to be in bad faith or with any improper motive, assuming that the question was objectionable. [9] Another assignment arose out of the fact that the district attorney, out of the presence of the jury, stated that he intended to call a witness who would testify that the appellant lived at the Crawford Apartments under the name of Williams. The court stated that he would permit the former but not the latter part. Subsequently the district attorney asked the appellant on cross-examination if she had lived in the Crawford Apartments under the name of Nichols, to which an objection was made by counsel for the defendant and was sustained. The most that can be said of this is that it was subject to the inference that she may have lived there under a different name. The only objection to this by the attorney for the defendant was that it was irrelevant, incompetent, and immaterial, which objection was sustained. Clearly there was no misconduct in that respect. [10] The next and only other assignment of misconduct justifying special consideration, if any of them do, is suggested by the following proceedings: Question by the district attorney (appellant on the stand): "When the officers came you hid, didn't you? A. No, sir, I was back—I was in the dressing room. Q. You didn't ask the officers what the trouble was? A. No one asked for me either. Don't forget that. Q. You are sure of that? A. Absolutely. No one searched the apartment or no one asked for me. Q. Why did you keep hid in the closet—Mr. Eddie: Just a minute. Object to the question as incompetent, irrelevant and immaterial. The court: You were both talking at once. I didn't get the question. Mr. McIsaac: This is along the line of flight. This witness concealed herself when the officers arrived. The court: Read the question. Mr. Eddie: Nothing testified to on direct examination about being hid in a closet. Mr. McIsaac: There has been a wide range of direct examination, and I have a right to cover the field on cross. If this witness made an effort to conceal herself from the officers it is material. . . . Mr. Eddie: They can prove flight by other

witnesses. There is no evidence here of flight at all. They are undertaking to make this witness a witness against herself. Mr. McIsaac: Withdraw the question.'' There is nothing in that statement to justify any accusation as to the district attorney's fairness or to impute to him any improper motive in asking the question, and in view of the fact that no suggestion by the attorney for appellant that it was unfair or improper was made at the time, it probably did not occur to him or to the jury that there was any such element involved in the question. The court sustained objections to all offers of proof made by the district attorney that have been made the basis for an assignment of misconduct and generally admonished the jury that they were not to consider the same. The instructions by the court on this phase of the case are such that even if proper and necessary assignments of misconduct had been taken by counsel for the appellant, we would be constrained to hold that no substantial right of the appellant was infringed by reason of any conduct of the district attorney in the prosecution of the trial. With reference to this matter the court instructed the jury as follows: '' . . . If any evidence has been admitted and afterward stricken out, you must disregard the matter so stricken out, entirely, and if any counsel has intimated by questions which the court has not permitted to be answered, that certain things are, or are not, true, you must disregard such questions and refrain from any inferences based upon them. If counsel, upon either side, have made any statements in your presence concerning the facts in the case, you must be careful not to regard such statements as evidence, and must look entirely to the proof in ascertaining what the facts are. . . . '' [11] In conclusion, upon this aspect of the case, we may well say that objections must be made to prejudicial misconduct of the district attorney as a basis for a complaint in the appellate court. As was well stated in the case of *People* v. *Peete,* 54 Cal. App. 333, at page 369 [202 Pac. 51, 67]: ''It frequently happens that in the heat of a trial counsel ask improper questions. But judgments cannot be reversed for an inadvertence of this character, unless, from an examination of the record, we may be of the opinion that it has caused a miscarriage of justice. In view of the court's prompt rulings and instructions to disregard the questions, which it will be presumed were heeded by the

jury, it cannot be said that defendant's cause suffered by reason of anything contained in these questions, however improper they may have been.'' In quoting the last phrase above we do not wish to be understood as implying that questions propounded by the district attorney in the instant case are subject to such a criticism.

[12] The remaining question to which particular attention is called by the appellant as a reason for reversing the judgment is based upon an attack upon an instruction by the trial court. It is appellant's contention in this behalf that the instructions are so entirely inconsistent and confusing that it is impossible to determine which of the instructions were applied by the jury to the evidence in the case. As an illustration of this contention appellant calls attention to the following instructions: ''1. Whether or not one is an accomplice as defined in these instructions, is for the jury to determine from all the testimony and circumstances in proof in the case. 2. A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof. 3. You are instructed that Mrs. Daws, who has testified in this case is. to be considered by you as an accomplice. 4. You are instructed that unless you find the testimony of the witness Mrs. Daws corroborated by other evidence which has been introduced in this case which tends to connect the defendant with the commission of the offense charged, you must find the defendant not guilty.'' The first instruction was a correct statement of the general principles of law as to the corroboration of accomplices, and in view of the succeeding instructions, all of which were given at the instance of the appellant, it might well have been omitted, but to say that these are uncertain or misleading is to do violence to the English language and convict jurors of supreme stupidity.

[13] The jury is told specifically in two separate instructions that Mrs. Daws was an accomplice, and in one that as such her testimony must be corroborated or the defendant acquitted. As intelligent men and women upon reading or hearing those instructions read, the jury could have arrived at no other conclusion than that the defendant could

not be convicted unless there was corroboration of Mrs. Daws' testimony, as outlined by the other instructions given by the court. Furthermore we are of the opinion that if the first instruction above quoted alone had been given, no sane juror, after a consideration of all the facts and circumstances adduced in the case, could have had any doubt whatever that Mrs. Daws was an accomplice. She was the instrumentality through which the proposed badger game was to be accomplished. She was the most active person involved in the transaction and no juror could have been so dense as to have had any doubt as to the fact of her being one of the conspirators. As a whole, the instructions by the court were full, fair, and comprehensive, and our attention has not been called to a single instruction that does not correctly state the law. It results from the foregoing opinion that the judgment of the court admitting the appellant to probation on count one of the information should be set aside; the judgment of the court sentencing appellant to the county jail for a term of years upon the second count be set aside, and that the court be and it is hereby directed to arraign the defendant for judgment and sentence and proceed therewith in the manner required by law.

Works, P. J., and Thompson, J., concurred.