THE PEOPLE, Respondent, v. ALBERT BABDATY, Appellant.

(2 Cal. Supp. 104.)

J. Q. Gilchrist, Hardy & Ludwick, for Appellant.

Ray L. Chesebro, City Attorney, Ernest K. Maine, Assistant City Attorney, and John L. Bland, Deputy City Attorney, for Respondent.

BISHOP, J.—Appellant was found guilty and sentenced on each of four counts, all arising out of the fact that on October 28, 1933, he conducted a tango parlor in the city of Los Angeles. In count I appellant was charged with violating section 320 of the Penal Code, in that he contrived, prepared, set up, proposed and drew a lottery. That tango, as played in appellant's parlor, was a lottery is too clear to permit of serious argument to the contrary. As pointed out in *People* v. *Hecht,* (1931) 119 Cal.

App. (Supp.) 778, 784 [3 Pac. (2d) 399], and more recently in *People* v. *Cardas*, (1933) 137 Cal. App. (Supp.) 788 [28 Pac. (2d) 99, 2 Cal. Supp. 89] : "The elements of a lottery are (1) the disposition of property, (2) upon the contingency determined by chance, (3) to a person who has paid a valuable consideration for the chance of winning the prize". This analysis is based on the definition of lottery given in section 319 of the Penal Code, which concludes with the declaration that a lottery is a lottery "by whatever name the same may be known".

 Fitting the pattern to the problem presented by appellant's game of tango we find no element lacking and none without full effect. Five dollars' worth of merchandise was offered as a prize. Some sixty players took part, each having obtained one or more cards for which he paid ten cents apiece. These cards had twenty-four numerals, selected from among the numerals one to seventy-five, inclusive, arranged in five rows with the middle space in the middle row left blank. Boxes divided into seventy-five compartments, each two inches square, and numbered one to seventy-five, were placed across the counter from, but convenient to, each player. A game proceeded by each participant in turn throwing a ball into one of the compartments, the number of which was then publicly declared. As these numbers were called the players noted them, if present on their cards, by covering them with markers provided for the purpose. The game ended when a player had a row covered with markers; that is, when all the numbers in any row on any one of his cards had been called. This might take place, of course, before his turn came to throw the ball; it always did take place before his turn came to throw the ball the second time. To the person with the winning row the merchandise put up as a prize was delivered. Whether or not appellant's game also included the right of each player to the use of a "skill ball", that is, one whose lodging place was counted on his card and not on that of the other players, does not affect the conclusion. As to each player, the fact remained that he won or did not win, depending perhaps not at all, at most only in part on his "skill" in throwing a ball into a compartment of his choice. Essentially, the merchandise put up as a prize was awarded to a person who had paid

a valuable consideration for the chance of winning, and the award was based on a contingency determined by chance. The game thus described is a lottery and appellant was properly convicted of having contrived and drawn a lottery.

A charge closely related to the first count was made in count IV. Here a violation of section 4 of Los Angeles city ordinance No. 37737 was alleged, that section prohibiting the possession of instruments, devices and objects used and intended to be used in contriving, preparing, setting up and drawing a lottery. As the evidence which revealed the possession of the means whereby a lottery was conducted also revealed that it was conducted, this case falls squarely within the rule that one may not be convicted and sentenced for a crime and also be convicted and punished for an act which is an incident of that crime. For example, it was held in *People* v. *Clemett*, (1929) 208 Cal. 142 [280 Pac. 681], that one convicted and sentenced because he operated a still could not also be punished for possession of the still. For other applications of the principle see *People* v. *Buchanan*, (1929) 106 Cal. App. (Supp.) 765 [288 Pac. 50], and *Ex parte Crawford*, (1930) 109 Cal. App. 33 [292 Pac. 520]. The acts alleged in count IV are plainly an incident of those set forth in count I; the judgment, in so far as it is based on count IV, may not stand.

We must reach the same conclusion with respect to count III, under which appellant was charged with keeping, conducting and maintaining a place where a game, not mentioned in sections 330 or 330a of the Penal Code, was played. Whatever else may be said of this count, at best it charges but another incident of the same public offense as that alleged in count I. In so far as the judgment is based on count III, it is without foundation.

In count II there was an attempt to charge a violation of section 330 of the Penal Code, the section which makes it a misdemeanor to deal or carry on a banking game played with any device for money or other representative of value. Of count II, however, we may state as the court did in *People* v. *Carroll*, (1889) 80 Cal. 153, 155 [22 Pac. 129] : "The information charges no offense under this section of the code, or any other. To constitute it an offense to conduct the game, it must be '*played* for money, checks, credits,

or any other representative of value'. The information does not charge that it was *played* for money, but that defendant conducted it for money.'' (The emphasis is the court's.) It is not the dealer's amateur standing which the law seeks to protect, but its aim rather, is to prohibit him from carrying on a gambling game at which money is staked. *In re Capanna,* (1920) 45 Cal. App. 501 [187 Pac. 1077] and *In re Clark,* (1921) 54 Cal. App. 507 [202 Pac. 50], follow *People* v. *Carroll, supra,* in declaring that allegations such as are found in count II, do not state a public offense. It follows, of course, that a judgment may not be based upon it.

So far as based on counts II, III and IV, therefore, the judgment must be reversed, with directions to the trial court to dismiss the case as to those counts, and it is so ordered. As to count I, the court imposed a jail sentence of thirty days ''to be suspended on condition defendant paid the fine of $100.00 on Count II''. As the fine on count II has fallen, the sentence on count I becomes inoperative. The judgment as to count I should, therefore, be set aside, with directions to the trial court to arraign appellant for judgment and thereupon render a new and proper judgment (*People* v. *Marks,* (1927) 83 Cal. App. 370 [257 Pac. 92]; and see cases cited in *People* v. *O'Brien,* (1932) 122 Cal. App. 147, 158 [9 Pac. (2d) 902, 906]), and it is so ordered.

Shaw, J., and Fox, P. J., concurred.