## MYERS v. BRICK.

(Supreme Court, Appellate Division, Fourth Department. July 11, 1911.)

1. WITNESSES (§ 201*)—COMPETENCY—ATTORNEY AND CLIENT.
    Where at an interview between attorney and client, relative to defending a suit for the client, a third person was present, who, on the question of funds for making the defense being broached, agreed to loan the money to the client, the attorney is not disqualified to testify, in an ac-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

tion between the other two on such agreement, as to what it was, it being a matter collateral to that of the attorney and client, and one as to which both the others could testify.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 754, 755; Dec. Dig. § 201.*]

2. WITNESSES (§ 201*)—COMPETENCY—ATTORNEY AND CLIENT.

Where at an interview between attorney and client as to defending a suit a third person agreed to loan the client money for the defense, the client to give such person a mortgage on certain property, which she had been enjoined not to mortgage, the attorney was not disqualified to testify, in a controversy between the others as to the agreement, that in a subsequent separate conversation with his client he advised her not to then give the mortgage, because it would put her in contempt; this relating merely to the agreement between the others.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 754, 755; Dec. Dig. § 201.*]

Appeal from Judgment on Report of Referee.

Action by Frank L. Myers against Hattie Burge Brick, sometimes called Hattie Burge Myers. From a judgment for plaintiff on the report of a referee, defendant appeals. Affirmed.

See, also, 134 App. Div. 955, 121 N. Y. Supp. 1140.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

H. W. Rippey, for appellant.

Chas. D. Newton, for respondent.

SPRING, J. The judgment is for money advanced by the plaintiff, at the request of the defendant, to carry on certain litigation in which the latter was interested.

In 1905 the defendant was living with an elderly lady named De Puy in a house which the latter had derived from her husband, and which she had conveyed to the defendant. A proceeding was commenced in the County Court of Livingston county to declare Mrs. De Puy incompetent to manage her affairs upon the petition of her son Isaac. The defendant realized that, if Mrs. De Puy was adjudged incompetent, the validity of her conveyance would be challenged. Neither she nor Mrs. De Puy had the means to carry on expensive litigation, and she was enjoined by order of the court from incumbering or conveying the premises she had acquired from Mrs. De Puy. She had long been intimate with the plaintiff, who had often supplied her with money, and in her stress applied to him for financial aid and he consented to furnish whatever was needed, and at his invitation the defendant and Mrs. De Puy met him at Hornell, where he resided. It is his claim that he there agreed with the defendant to furnish whatever money was required for the purpose of defending the lunacy proceeding and to appeal to the Appellate Division in case of an adverse inquisition, and also to defend the attack upon her title to the house and lot in Nunda. Lawyers of prominence were employed in the litigation, which was protracted, medical experts were in attendance, and the plaintiff paid the expenses. There seems to be no controversy over that fact. After the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

pending action was commenced he served a bill of particulars containing an itemized statement of the sums expended, and these expenditures were supported by proof on the trial. The defendant was not sworn, but it was her claim that the money was advanced gratuitously by the plaintiff, and without the expectation of reimbursement. The referee has found with the plaintiff on the disputed questions of fact, and his findings are sufficiently sustained by the evidence. The appellant upon this appeal challenges the correctness of the decision of the referee in many particulars, only one or two of which need be adverted to.

[1] At the plaintiff's suggestion, and with the approval of Mrs. De Puy and the defendant, Mr. Nelson, a prominent lawyer and the mayor of Hornell, was retained to take charge of the litigation mentioned in their behalf. They went to the office of Mr. Nelson, accompanied by the plaintiff, who did not remain during the first interview. The attorney testified that he told the two women it would be expensive to defend the lunacy proceeding, and inquired whether they had the necessary means, and the defendant said that the plaintiff, on certain conditions, would supply the money required. In the afternoon of the same day the plaintiff and the defendant returned to the lawyer's office, and Nelson testified that the plaintiff agreed to furnish whatever money was needed to carry on the litigation, even to the extent of providing for an appeal if one was necessary, provided Dr. Parkhill, who was then examining Mrs. De Puy, was of the opinion she was sane, and he so determined. The defendant agreed to repay him for the money advanced, and to secure the same by a mortgage on the house and lot she had acquired from Mrs. De Puy. This proof was strongly objected to on behalf of the defendant on the ground that the communication was privileged, and hence within the prohibition of section 835 of the Code of Civil Procedure. I think the witness was not disqualified. In order that a client or person seeking professional advice may be encouraged to freely give a truthful narration of the facts upon which the advice is based, the attorney is not permitted to disclose the communication made to him. Generally the participants in an interview are only the lawyer and the client, and it is given in secret. If, however, others who are competent to testify are present at the interview, the reason for the rule is gone, and the ban is removed. If two parties are before an attorney together seeking advice against a common enemy, and later a controversy arises between these two parties and the communications to the attorney or made in his presence may be important, either can state what occurred, and consequently the mouth of the lawyer is not closed.

The plaintiff and the defendant were consulting with Nelson to enable him to advise and act professionally in the litigation commenced by Isaac De Puy. In the conversation with Nelson the question of money to defray the expenses of the contests arose. It was an independent or collateral subject in which the plaintiff and the defendant had a common interest, and it did not pertain to the performance of the duties of Nelson in behalf of his clients in the litigation then pending. The plaintiff agreed to loan the money the defendant

needed. In a controversy between these two over the agreement either one could testify to the arrangement made in the presence of the lawyer who was acting on their behalf, and hence he is not disqualified. Hurlburt et al. v. Hurlburt, 128 N. Y. 420, 28 N. E. 651, 26 Am. St. Rep. 482; Whiting v. Barney et al., 30 N. Y. 330, 86 Am. Dec. 385; Doheny v. Lacy, 168 N. Y. 213, 223, 224, 61 N. E. 255; Hebbard v. Haughian, 70 N. Y. 54. In the first case cited the action was brought by the administrator of Charles Hurlburt, deceased, against the administrators of his son, Theron, for money claimed to have been loaned by the father to the son. These two consulted a lawyer in regard to adjusting the future interest of another son in the estate of the father. During the conversation certain statements and admissions were made by the father or assented to by him in the presence of the attorney. The lawyer was permitted to testify to these admissions and statements, and the Court of Appeals held there was no violation of section 835 of the Code of Civil Procedure in receiving the evidence. The court said at page 424 of 128 N. Y., page 652 of 28 N. E. (26 Am. St. Rep. 482):

"It has frequently been said that the object of the rule embodied in the section is to enable and encourage persons needing professional advice to disclose freely the facts in reference to which they seek advice without fear that such facts will be made public to their disgrace or detriment by their attorney. Such a case as this is plainly not within the rule. Here Theron and his father were both interested in the advice which they sought, and they were both present at the same time and engaged in the same conversation. Each heard what the other said, so that the disclosures made were not as between them confidential; and there can be no reason for treating such disclosures as privileged. It has frequently been held that the privilege secured by this rule of law does not apply to a case where two or more persons consult an attorney for their mutual benefit, that it cannot be invoked in any litigation which may thereafter arise between such persons, but can be in a litigation between them and strangers."

[2] Nelson prepared a mortgage for the defendant to execute in order to secure the plaintiff for the advances which it was expected he would make in her behalf, and the giving of this security was contemplated by their agreement. The attorney testified that in a separate conversation with the defendant he advised her not to execute the mortgage at that time, as by doing so she would be amenable to punishment for contempt of court. This conversation was also competent as it was in furtherance and fulfillment of the agreement made between the parties to the action; and, in any event, it was not of especial importance in view of what had been said and arranged at the prior meeting in the lawyer's presence.

On cross-examination the defendant's counsel endeavored to prove by the plaintiff that the defendant had been his mistress almost constantly since his acquaintance with her, and the evidence was excluded. The relations of the parties appear sufficiently by the record, so that there was no necessity of designating them by name, and the referee has found distinctly in regard to them.

The plaintiff testified to the sums of money he advanced for the defendant. Long before the trial he had in a bill of particulars advised the defendant of each item of his claim against her and to whom the advancement was made, and she did not contradict any of

the charges. We must assume, therefore, that she was satisfied that he paid out the various sums claimed by him.

The judgment should be affirmed.

Judgment affirmed, with costs. All concur.