In the Matter of the Estate of ROSE KIVE, Deceased.

Surrogate's Court, Kings County, February 19, 1931.

*Lester Lewin,* for the petitioner.

*Albert M. Lee,* for the objectant.

WINGATE, S. The truism of judicial experience that cases of insignificant financial moment frequently furnish most interesting legal problems is so commonplace as to make its repetition savor of the bromidic. It is, however, peculiarly pertinent to the present proceeding. The questions here before the bar for determination arise on objections to the account of an executor and concern themselves with his failure to include in the assets of the estate certain portions of a bank account which at testatrix's death were deposited in a savings bank in his name as trustee for her.

Stated in chronological order the pertinent facts are as follows: On June 7, 1920, the executor opened an individual savings account No. 24,921 in the Prudential Savings Bank. On October 31, 1927, he opened an account No. 70,367 in the same bank in his own name "in trust for Rosi Keve." The funds in both of these accounts were his own. At some undisclosed time, the decedent with her own money opened an account No. 907,763 in the Central Savings Bank in which at the time of the transactions in controversy she had a balance of approximately $3,600. On January 13, 1930, the executor closed account No. 24,921 standing in his personal name. The balance at that time amounted to $205.58, of which he withdrew $100 in cash, transferring the remainder to account No. 70,367 standing in his name as trustee for Rosi. The following day the decedent signed a draft on the Central Savings Bank payable to the Prudential Savings Bank for the total of her account No. 907,763 and sent this draft to the Prudential Savings Bank, together with a letter reading as follows:

"*Jan.* 14, 1930.

"PRUDENTIAL SAVINGS BANK

"GENTLEMEN: Please collect the balance I now have in Central Savings Bank Book 907,763 and have same deposited to account No. 70367 in the name of Adolph Keve in trust for Rosi

"(Signed)     ROSA KEVE"

On January 15, 1930, the Prudential Savings Bank effected collection of the draft and credited the total proceeds, amounting to $3,672.48, to account No. 70,367 standing in the name of "Adolph Keve in trust for Rosi Keve." On January thirty-first Adolph withdrew $132.61 from this account. The testatrix died on February 10, 1930, and on February thirteenth the executor withdrew the balance of account No. 70,367 and opened a new account with the proceeds in his own name. On these facts the court is asked to determine whether or not the sum of $3,672.48, credited to the "trust" account on January 15, 1930, by direction of the decedent, forms a part of her estate assets or belongs to Adolph Keve personally.

It has been made to appear herein that Adolph Keve is the proprietor of a small individual tailoring establishment and that the decedent had been a semi-invalid for some considerable period and for a time an inmate of a hospital. On January 18, 1930, an attorney by the name of Louis H. Bulnick, a customer of the tailoring establishment, was called in by Mr. Keve in a professional capacity and had a conversation with Mr. and Mrs. Keve respecting the transactions here in dispute. He was summoned as a witness on the hearing and his testimony was taken subject to objection under section 353 of the Civil Practice Act. He stated in a preliminary examination to determine his competency as a witness, that while he had been called in by Mr. Keve, the entire subject had been discussed by him with and in the presence of both Mr. and Mrs. Keve. On fundamental principles it is entirely apparent on this showing that his relations to the decedent were not of the confidential nature of attorney to client which would preclude him from testifying respecting this conference, and the same applies to a subsequent talk which he had with both parties on January 20, 1930.

In *Hurlburt* v. *Hurlburt* (128 N. Y. 420) the court says (at p. 424): " It has frequently been held that the privilege secured by this rule of law does not apply to a case where two or more persons consult an attorney for their mutual benefit, that it cannot be invoked in any litigation which may thereafter arise between such persons, but can be in a litigation between them and strangers."

*Matter of McCarthy* (55 Hun, 7) contains the following language (at p. 12): " Under this rule it has been uniformly held that a communication made by a client to his counsel in the presence of third parties, whether they were strangers or not to the subject-matter of the communication, are competent. (*Coveney* v. *Tannahill*, 1 Hill, 33; *Whiting* v. *Barney*, 30 N. Y. 330.) " (See, also, *Myers* v. *Brick*, 146 App. Div. 197, 200.)

Mr. Bulnick's testimony was to the effect that Mrs. Keve at the time of his call was suffering so severely from rheumatism

as to incapacitate her; that she explained to him the transfer of the funds to account No. 70,367 and stated that she wished him to investigate it and see that it had been properly accomplished, saying: " I want Mr. Kive to have all my money; he has been very nice to me; I am very sick; I can't move; I am ill, suffering terribly with rheumatism.  *  *  *  I want you to please check up if the money was sent over to Mr. Kive."  In company with Mr. Keve, Mr. Bulnick went to the Prudential Savings Bank on January twentieth, and verified the transaction, after which, in Mr. Keve's presence, he had a further talk with the decedent concerning which he testified: " she again related to me that Mr. Kive was very nice and very happy and very sweet; she wanted him to have the money. He was an old man and she wanted him to have it to his dying day. If anything should happen to him why then any money that he had he would leave to her anyway."

It appears that at some time prior to the transaction here in question, the decedent had made a will in which she had left legacies of $1,000 to a son by a former marriage and two legacies of $300 each to two nephews.  Mr. Bulnick's testimony indicates that this will was referred to by Mrs. Keve in her conversation with him but the purport of such reference was not made to appear.

It is, of course, fundamentally established that at the time the husband opened the " trust " account in the Prudential Savings Bank, he accomplished an act the legal results of which are clearly and authoritatively set forth in *Matter of Totten* (179 N. Y. 112, at p. 125): " A deposit by one person of his own money, in his own name as trustee for another, standing alone, does not establish an irre- [126] vocable trust during the lifetime of the depositor. It is a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration, such as delivery of the pass book or notice to the beneficiary.  In case the depositor dies before the beneficiary without revocation, or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor."

As a result, the status of this account prior to the transfer of the decedent's funds to it, was merely a tentative trust over which Adolph Keve had complete dominion during his life.  In the event of his predeceasing Mrs. Keve, the avails of the fund still in the bank would have become her sole property. (Banking Law, § 249, subd. 2; *Matter of Richardson*, 134 Misc. 174, see particularly p. 178 and cases cited.)

While the court is frequently loath to apply in all its rigor the rule that every person is conclusively presumed to know the law,

experience has demonstrated that the community as a whole and particularly individuals of small means are fully acquainted with the legal rules respecting savings bank trusts and this seems to be borne out with reasonable clearness in the statements of Mrs. Keve to Mr. Bulnick regarding the legal results which would flow from the predecease of her husband. That the knowledge and practice of the community respecting savings bank trusts is well within the scope of judicial notice would seem to be definitely demonstrated by the language of the Court of Appeals in *Beaver* v. *Beaver* (117 N. Y. 421, at p. 430).

Even in the absence of Mr. Bulnick's testimony, the only fair inference to be drawn from the actions of the parties is that they determined to pool their resources in such a manner that the husband should obtain exclusive possession of the whole if he proved to be the survivor, and that the entirety should pass to the wife in the event of his predecease. No other reasonable conclusion is to be drawn from the substantially simultaneous closing of their respective individual accounts and their transfer of the avails to the " trust " account.

To the query of the objecting parties as to why, if such were Mrs. Keve's desire, she did not effect the same result by certain other available methods, the one complete and sufficient answer is that she chose a method which was entirely efficacious for the purpose and involved the least expense and effort on her part. The objectors further urge that the letter signed by Mrs. Keve on January 14, 1930, constituted a written trust instrument which could not be varied by parol. It was nothing of the kind. It was merely a direction to the corporate agent chosen to effect the transfer of the funds to collect the accompanying draft, and to credit the avails in a certain existing account. There was no necessity for the husband to be a party to that transaction and so far as the written record is concerned, he was not. It was precisely as if her husband had possessed control over a number of different safe deposit boxes, the respective contents of which were validly dedicated to certain distinct specific purposes and the decedent had directed her independent agent to place certain property belonging to her in a certain one of these boxes. It is quite possible that if no trust account had been in existence at the time of the direction to the Prudential Savings Bank, and testatrix's instructions had been that the proceeds of the draft should be used for opening a new account in the name of Adolph Keve in trust for Rosi Keve, an actual irrevocable trust would have arisen by reason of the performance of the act. Since, however, account No. 70,367 to which the proceeds were, by her

direction, credited, already possessed the distinguishing characteristics of a Totten trust, the inevitable result of the decedent's act in directing the commingling of her personal funds with the funds already in that trust, was to impress upon her fund the same characteristics which the moneys previously deposited therein, possessed. This point is expressly determined in *Farleigh* v. *Cadman* (159 N. Y. 169), where the court says (at p. 174): " The subsequent deposits made to the credit of this account cannot be detached or separated from the original deposit by means of which the trust was created, in the absence of a finding that they were intended for some other purpose, or that they were not made for the plaintiff's benefit. These deposits were *prima facie*, at least, made for the same purpose at the first one, and hence in every case were additions to the original gift."

It follows, therefore, that since the trust imposed upon the funds in this account was, under the decision in *Matter of Totten*, revocable by Mr. Keve, its creator, up to the time of his death, he had a perfect right to withdraw all the moneys therein contained on February 13, 1930, and apply them to his own uses.

It results that the objections to the account must be overruled. Proceed accordingly.