IN THE MATTER OF PROVING THE WILL OF JOHN McCARTHY, DECEASED.

*Evidence by the subscribing witness to a will as to the mental condition of the testator — when incompetent — not competent on cross-examination to test the intelligence of the witness — communications between attorney and client in the presence of others, not privileged.*

In proceedings for the probate of a will, a subscribing witness to the will was asked, on his cross-examination, the following question: "Do you think he had mind sufficient, at the time he is alleged to have executed that will, to give those specific directions with reference to the disposition of that property to Mr. Nicholas?" which was answered, under objection: "I do not think he was; I do not think he had; I knew nothing about the contents of the will at the time I witnessed it; I only knew it was a will from what Mr. Nicholas said."

*Held,* that as the direct-examination of the witness had shown that he was a layman and a man of very limited education, and as the inquiry embraced in the question covered the whole issue as to testamentary capacity, and the answer of the witness expressed his opinion on the only question in dispute, that the evidence was incompetent.

That, as the question was not limited to an inquiry as to the opinion of the witness in regard to the sanity of the testator at the time of the execution of the will, the evidence was not rendered competent by the fact that the witness was a subscribing witness to the will.

*Hewlett* v. *Wood* (55 N. Y., 634); *Clapp* v. *Fullerton* (31 id., 190); *Matter of Forman's Will* (54 Barb., 274) distinguished.

That, as the witness, on his direct-examination, had only stated facts which came within his observation, and expressed no opinion that the testator was of sound mind, this cross-examination was not proper for the purpose of ascertaining the degree of intelligence possessed by the witness in order to enable the court to determine the reliance which should be placed on his evidence given on his direct-examination.

The counsel who prepared the will at the home of the decedent on the day that it was executed, all the members of the family being aware that he was there for that purpose, stated that he had a conversation with the testator in the presence of the subscribing witnesses. This conversation the proponents offered to prove,

but it was objected to as incompetent under section 835 of the Code of Civil Procedure, and the objection was sustained.

*Held*, that in order to bring a case within this section of the statute, it must appear that the communication was confidential, and was made to one acting in the capacity of an attorney or counsel; that the communication made by a client to his counsel in the presence of third parties, whether they are strangers or not to the subject-matter of the communication, might be testified to by the counsel.

That this evidence should have been admitted.

APPEAL by James McCarthy and others, legatees and devisees named in the last will of John McCarthy, deceased, and by O. J. Cammann Rose, executor named in said will, from a decree made at the Surrogate's Court in Ontario county, entered in said court on the 3d day of May, 1889, in proceedings relating to the probate of the will of John McCarthy, deceased, by which decree it was adjudged that the said John McCarthy, at the time of the alleged execution of the instrument offered for probate, was not competent to execute the same.

The instrument propounded as his last will and testament was dated on the 22d day of November, 1888. The will disposed of all the estate of the testator, which consisted of real and personal property. He left him surviving his widow and one daughter. The latter his only heir-at-law. At the time of his death he was eighty-four years old. He bequeathed all his personal property to his widow and devised his real estate to her and his nephews, making no provision whatever for his daughter. It is not disclosed in the case what was the value of his property, either real or personal, nor the situation in life of his daughter, who was married and living away from his family. His widow is eighty years of age. The probate of the will was resisted upon the ground, among others, that the decedent did not possess testamentary capacity. Upon that ground alone the surrogate based his decree. The devisees other than the widow and the executor, are the appellants.

*John E. Bean*, for the appellants.

*D. B. Backenstose*, for the respondents.

BARKER, P. J.:

The subscribing witnesses were Patrick Mulcahy and Patrick H. Mulcahy, father and son, who were both called and examined as

witnesses on the hearing, and their evidence proved the formal execution of the will in compliance with all the requirements of the statute. One of them, Patrick H., was asked by the counsel for the proponents this question: What can you say as to the competency of Mr. McCarthy to make a will? Which the witness answered by saying: "Well, sir, I could not say." He was then asked: What can you say as to whether he was of sound mind or not? To this he answered: "I do not know, sir. I do not know whether he understood what was said to him or not, but he seemed to answer all right. He answered the questions put to him all right; if he was asked to do anything he did it. Mr. McCarthy was not under any restraint that I know of. I don't know whether he acted voluntarily or not. No one made him do what he did as I know of. He wrote his name. I suppose he did that voluntarily." This is the material part of the witness' evidence as given on his direct-examination as to the mental condition of the testator at the time of the execution of the will.

On his cross-examination the counsel for the contestants asked the witness this question: "Do you think he had mind sufficient at the time he is alleged to have executed that will to give those specific directions with reference to the disposition of that property to Mr. Nicholas?" This was objected to as improper and overruled and an exception taken by the proponents, and the witness answered: "I don't think he was; I don't think he had; I knew nothing about the contents of the will at the time I witnessed it; I only knew it was a will from what Mr. Nicholas said." We think the question and answer was clearly incompetent. The witness was a layman, and as his evidence discloses that his education was quite limited, the inquiry embraced in the question covered the whole issue on the question of testamentary capacity, and the witness' answer expressed his opinion on the only question in dispute. The reception of this evidence violates the general rule, that witnesses must state facts within their knowledge, and not give their opinions or their impressions based upon their observations. The inquiry does not come within any of the few exceptions to this rule, one of which is, that those who are skilled in any "science, art, trade or occupation may not only testify to facts, but are sometimes permitted to give their

opinion as experts. This is permitted because such witnesses are supposed, from their experience and study, to have peculiar knowledge upon the subject of inquiry which jurors generally have not, and are thus supposed to be more capable of drawing conclusions from facts and to pass opinions thereon than jurors generally are presumed to be." (*Ferguson* v. *Hubbell*, 97 N. Y., 507.)

Nor was the witness competent because he was a subscribing witness to give an answer to the question propounded, for the inquiry was not limited to an expression of the opinion of the witness as to the sanity of the testator at the time of the execution of the will so as to bring the case within the rule stated in *Hewlett* v. *Wood* (55 N. Y., 634) and *Clapp* v. *Fullerton* (34 id. 190). The inquiry was broader and called for the expression of an opinion by the witness whether the testator had capacity to make the will in question and give instructions to his counsel for its preparation. A person who is *non compos mentis* cannot make a valid will, however simple its preparation may be; if he is of sound mind and memory, he can make a will disposing of his property, however complicated. In determining the question of testamentary capacity on the part of a testator, in particular instances, whenever the question arises, the inquiry is not, had the testator capacity to make the will in question, but whether he was of sound mind and memory at the time of its execution. (*Delafield* v. *Parish*, 25 N. Y., 97.)

The cases to which we have been cited by the learned counsel for the respondents in support of the competency of the question have been examined, and do not, as it appears to us, support his position. In the *Matter of Forman's Will* (54 Barb., 274) no question was presented as to the rules of evidence, and the matter discussed related to the degree of testamentary capacity necessary to enable a party to make a valid disposition of his property by will. Nor can it be fairly said that the question was competent on cross-examination for the purpose of ascertaining the degree of intelligence possessed by the witness, for the purpose of enabling the court to determine the reliance which should be placed upon his evidence given on his direct examination, for the witness had only stated facts which had come within his observation, and expressed no opinion that the testator was of sound mind and memory at the time of the execution of the will.

It is also competent for a party against whom a witness is called on the cross-examination to so conduct the same as to develop the state of mind of the witness towards the parties; the circum-, stances under which he testifies; his degree of intelligence and discernment; and the questions which may be propounded for that purpose are largely within the discretion of the court. But, in view of the character of the evidence given by the witness on his direct-examination, we think permitting the question under consideration to be asked and answered was a plain abuse of the discretion which the law vests in the court.

The proponents called as a witness the counsel who prepared the will at the home of the decedent on the day that it was executed, all the members of the family being aware that he was there for that purpose. He testified that the testator requested the subscribing witnesses to act as such, and he gave the conversation which passed between them and the testator relative to the execution of the will, in which, as he says, he took no part. He also stated that he had a conversation with the testator in the presence of the subscribing witnesses, which the proponents offered to prove. This the contestants objected to as incompetent, under section 835 of the Code of Civil Procedure, and the same was sustained and the proponents took an exception. The section reads as follows: " An attorney or counselor-at-law shall not be allowed to disclose a communication, made by his client to him, or his advice given thereon, in the course of his professional employment." This section is a mere codification of the common-law rule on the subject, as established in this State at the time of its adoption. When and by whom its protection may be invoked must be determined by the circumstances of each case as it arises. It is, however, necessary, in order to bring a case within the rule of the statute, that it should appear that the communication sought to be proved was confidential, and made to one acting in the capacity of attorney or counsel. The general rule deducible from the authorities was formulated and adopted in *Britton* v. *Lorenz* (45 N. Y., 51,) as follows: " That all communications made by a client to his counsel, for the purpose of professional advice or assistance, are privileged, whether such advice relates to a suit pending, one contemplated, or to any other matter proper for such advice or aid; that, where the communications

are made in the presence of all the parties to the controversy, they are not privileged, but the evidence is competent between such parties." .Under this rule it has been uniformly held that a communication made by a client to his counsel in the presence of third parties, whether they were strangers or not to the subject-matter of the communication, are competent. (*Coveney* v. *Tannahill*, 1 Hill, 33 ; *Whiting* v. *Barney*, 30 N. Y., 330.)

The circumstance that the conversation sought to be proved was made in the presence of the subscribing witnesses indicates very clearly to our minds that there was no thought on the part of the testator of its being confidential. Whatever may have been said was heard by both of the subscribing witnesses, and either might be compelled, upon the call of any interested party, to prove the conversation which was rejected by the court on the sole ground that the witness by whom it was offered to be proved was the attorney of the party making the communication.

The proponents asked the same witness this question : Where did you get your instructions from to draw the will ? This was objected to as being in violation of the same provision of the statutes, and the objection was sustained unless the instructions came from some other person than the testator. We are also of the opinion that this ruling was erroneous. It is manifest that this question was asked of the witness for the purpose of establishing the fact that he received instructions from the testator to prepare a will containing the provisions set forth in the instrument produced. It seems almost absurd to say that such instructions were confidential for they were intended to be communicated to his heirs-at-law and legatees and devisees named therein, and to the public whenever, after his death, the will should be offered for probate. If it was competent evidence, as we think it was, it was material to the proponent's case as bearing upon the question of the condition and strength of the testator's mind at the time of making the will. It may often happen that a party in conversation with his counsel, for the purpose of making and preparing a will, may communicate many things of a confidential character which the counsel would not be permitted to disclose, but we entertain the opinion that all the instructions received by the counsel, and all acts of the testator connected with the making and execution of the will which tend to

uphold and support the instrument which the testator executed as being his free, voluntary and valid act, may be proved by the person who assisted him in preparing the will, although at that time he was acting as the legal adviser of the testator. It is a very common practice, in contests over the validity of wills, to call as witnesses the physicians who attended upon the testator at or about the time the will was executed, for the purpose of proving the testator's mental condition, and it has never been held, as we are aware, that it was in violation of the provisions of the statute which prohibits a physician from disclosing any information which he acquired in attending a patient in a professional capacity, to relate the conversation which he had with the testator concerning his mental or physical ailments.

It was claimed by the executor who offered the will for probate, that he, as one of the personal representatives of the testator named in the will, released the witness from any restraints imposed upon him by the statute, and thus qualified him to testify, if without such permission he would be incompetent. As it is unnecessary in disposing of this appeal to consider that question, we pass it without expressing any opinion on the proposition.

The surrogate did not call upon the contestants to make any proof, and held upon the proponent's own showing that the will was void, because the testator did not possess testamentary capacity. We should hesitate to concur with the surrogate upon that question upon the proofs presented by this record, if that question need to be passed upon in disposing of this appeal.

We have concluded, however, to reverse the decree and remit the proceedings to the surrogate of Ontario county for another hearing, that the case may be first adjudicated in that court upon all the legal evidence which the parties may produce. The costs of this appeal to abide the event of the subsequent proceedings in Surrogate's Court.

DWIGHT and MACOMBER, JJ., concurred.

Decree reversed and proceedings remitted to Surrogate's Court of Ontario county to proceed therein; costs of this appeal to abide the result of further proceedings.