[Crim. No. 1472. Second Appellate District, Division One.—March 26, 1927.]

## In the Matter of the Application of GLADYS NICHOLS for a Writ of Habeas Corpus.

[1] CRIMINAL LAW—EXTORTION—FALSELY MOVING AND MAINTAINING SUIT — CONSPIRACY—INFORMATION—CONSTRUCTION OF.—An information charging in one count a conspiracy to commit the crime of extortion, and in a second count charging a conspiracy to falsely move and maintain an action, charges but one offense, where the first count charges in substance that the defendants committed certain acts toward getting the alleged victim in a room in company with a woman confederate, and then demanding money from said victim on threat of suing him for alienation of affections, and the second count charges substantially the same acts as are set forth in the first count, and further alleges that the conspirators falsely represented that one of the male conspirators was married to said woman confederate.

[2] ID. — SINGLE CONSPIRACY — ILLEGAL SENTENCE — PROBATION—HABEAS CORPUS—JUDGMENT.—The information in question having charged but a single conspiracy, the trial court, upon a conviction under both counts, had no authority to grant probation to one of the defendants under the first count, and at the same time to sentence her to a term in the state prison under the second count; but the error committed by the trial court should not avail to the end that the release of such defendant should be ordered on *habeas corpus,* and in disposing of said defendant "as the justice of the case may require," the trial court will be ordered to arraign the defendant for judgment and proceed in the manner required by law.

(1) 31 C. J., p. 780, n. 40.    (2) 16 C. J., p. 1288, n. 29; 29 C. J., p. 175, n. 38.

PROCEEDING in Habeas Corpus to secure release of petitioner after conviction of conspiracy. Writ discharged; petitioner remanded.

The facts are stated in the opinion of the court.

A. D. Orme for Petitioner.

1.  See 14 Cal. Jur. 64, 66.
2.  See 13 Cal. Jur. 281.

Asa Keyes, District Attorney, and Tracy Chatfield Becker, Deputy District Attorney, for Respondent.

HOUSER, J.—*Habeas corpus.* In the first count of the information petitioner was charged with "the crime of conspiracy to commit the crime of extortion"; and in the second count of the information with the "crime of conspiracy to falsely move and maintain a suit, action and proceeding." On the trial of the action petitioner herein was convicted on each of such counts. Under the first count, by order of the trial court, petitioner was placed on probation, and under the second count she was sentenced to a term in the state prison.

[1] In this proceeding it is the contention of petitioner that, notwithstanding the fact that the information formally contained two counts, as a matter of law but one offense was stated therein; that the order made by the trial court on the so-called first count of the information in granting probation to petitioner exceeded the jurisdiction of said court and that the sentence imposed on petitioner under the second count of the information was in excess of the jurisdiction of said court and consequently was a nullity.

The prosecution of petitioner in the criminal action was authorized by section 182 of the Penal Code, wherein, among other things, it is provided that if two or more persons conspire

"(1) to commit any crime . . . ;

"(3) falsely to move or maintain any suit, action or proceeding . . . ," they shall be punishable as in said section prescribed.

In the first count of the information, as hereinbefore set forth, petitioner was charged with the crime of conspiracy to commit the crime of extortion in that she and two other persons named therein "did wilfully, unlawfully and feloniously, wickedly and fraudulently conspire, combine, confederate and agree with Carl H. Marks and Hilda E. Daws, and each with the other, to commit a felony, to-wit, the crime of extortion, in the county of Los Angeles, state of California; that thereafter, and in the furtherance of the conspiracy aforesaid, the said defendant Gladys Nichols, together with Carl H. Marks and Hilda E. Daws, did call up the said R. J. Johnson on the telephone and make an ap-

pointment for a demonstration of an automobile, and did go out with said R. J. Johnson for a demonstration, and did rent a room in the Crawford Apartments at number 941 South Georgia street, in which the said R. J. Johnson was to be trapped with Hilda E. Daws; and did make an appointment with the said R. J. Johnson to go to said room with Hilda E. Daws; and did watch the said Hilda E. Daws and R. J. Johnson go up to said apartment, and did thereafter enter the said room and surprise the said R. J. Johnson therein in company with the said Hilda E. Daws; and did demand money from the said R. J. Johnson; and did threaten to sue the said R. J. Johnson for alienation of affections, and did hire and employ an attorney for the purpose of suing the said R. J. Johnson, and for the purpose of thereby and therein, as aforesaid, of extorting and obtaining money from the said R. J. Johnson; contrary to the form, force and effect of the statute in such cases made and provided, and against the peace and dignity of the People of the State of California.''

Without setting forth the language of the second count of the information, it may suffice to state that thereby petitioner was charged with the commission of the crime of conspiracy to falsely move and maintain a suit, action, and proceeding by doing and performing substantially the same acts as were set forth in the first count, together with the additional allegation that petitioner and her confederates ''did falsely pretend and represent that Carl H. Marks was married to Hilda E. Daws, and did thereby and therein conspire to falsely maintain a suit for alienation of the affections aforesaid.''

The act alleged to have been committed by the defendant in the first count of the criminal action by which a conspiracy to commit one criminal act was charged was therefore substantially restated in the second count by which the defendant was charged with having committed a different offense. The only difference between the allegations in the two counts was that in the second count the falsity of the pretension of the conspirators that Hilda E. Daws was the wife of Carl H. Marks was alleged, which allegation was omitted from the first count.

By section 518 of the Penal Code, extortion is defined as ''the obtaining of property from another, with his consent,

induced by the wrongful use of force or fear . . . "
And the "fear" which will constitute extortion may be induced by a threat to do *an unlawful injury* to the property of the individual who is threatened. (Sec. 519, Pen. Code.)

In the count on conspiracy to commit extortion the only injury with which the intended victim was threatened was that he would be sued for "alienation of affections" of Hilda E. Daws. Neither count of the information contains an allegation that the affections of Hilda E. Daws had been alienated by the intended victim; nor apparently, at least so far as may be determined from the information, had he committed any unlawful act. Had Hilda E. Daws been an unmarried woman her "affections" could not have been alienated so as to create a cause of civil action in Marks or any other person. As specifically stated in the statute (sec. 519, Pen. Code), in order that the criminal act may amount to extortion, in effect the threat must be that unless the intended victim comply with such demands as may be made of him, an unlawful injury will result to his property. It is plain that ordinarily, and in the absence of collusion, no unlawful injury would ensue to a man who was sued, or threatened to be sued, because he had alienated the "affections" of a married woman, and that in the circumstances the threatened unlawful injury to the intended victim in the criminal action here being considered arose solely because Hilda E. Daws was not the wife of Carl H. Marks; in other words, on the assumed facts herein, there could be an unlawful injury only in the event that no cause of action existed with reference to the feature of alienated affections. The gist of the offense was that money was demanded by the alleged conspirators for the purpose of preventing the bringing of an action that could not be maintained—which constituted the threatened unlawful injury to which reference is made in the statute.

In the case of *People* v. *Schmidt*, 7 Cal. App. 330, 369, 370 [15 L. R. A. (N. S.) 717, 94 Pac. 407], in denying an application for hearing in the supreme court after decision by the district court of appeal, the following language occurs:

"It is very plain that to constitute the crime of extortion committed by means of any threat to injure property of the

person threatened, the *injury* threatened, as was, in effect, said by the learned district court, must be, in itself, unlawful, irrespective of whether or not the purpose with which the threat is made is to obtain money to which the person threatened is not entitled. . . . The word 'unlawful,' as used in this statute, qualifies the word 'injury,' alone. If the injury threatened to the property is one which the person threatening has an absolute legal right to do, he cannot be held to have threatened 'to do an unlawful injury' to the property; even though his motive in making the threat is to obtain from the person threatened money to which he is not entitled, and, consequently, it cannot be held to be an injury within the provisions of sections 519 and 520 of the Penal Code. . . .

"What is meant by the term 'unlawful injury'? Giving to such term the broadest meaning possible under the authorities, it can include no injury that is not of such a character that, if it had been committed as threatened, it would have constituted an actionable wrong, an injury for which an action for the resultant damages could be maintained against the defendant, or which, if merely threatened, could be enjoined in equity if the remedy at law were deemed inadequate."

In the later case of *People* v. *Sanders,* 188 Cal. 744, 756, 757 [207 Pac. 380, 385], the ruling in the Schmidt case was reaffirmed. In commenting thereon, it is said: "This court in that case decided that the term 'unlawful injury' as used in section 519, subdivision 1, of the Penal Code had reference to injuries of such a character that if committed as threatened would have constituted an actionable wrong, and further held that the indictment in that case did not sufficiently show that the acts threatened, as stated therein, were not such as could and would have been lawfully done; and that in order to render an act which a person might lawfully do an unlawful injury to the person or property of another, such act must be threatened to be done by means which the law denounces as unlawful. . . . "

It may therefore be taken as established law that, considering the first count of the information herein, one of the essential allegations was that an unlawful injury was threatened as to the property of the intended victim. The

only unlawful injury which, solely from the context of such count, could possibly result to the intended victim was that a civil action would be brought against him for alienating the affections of Hilda E. Daws, not from her husband, because she had none, but from her co-conspirator Carl H. Marks. If it be possible (which point is unnecessary of decision here) that said first count stated the commission of a criminal offense, it does so only by considering that it contains a sufficient averment of fact that Hilda E. Daws was not a married woman, and, therefore, that by reason of the threatened civil action for the alienation of the affections of Hilda E. Daws an unlawful injury was threatened as against the intended victim. So considered, in substance the first count of the information would be identical with the second count thereof.

In the case of *People* v. *Johnson*, 22 Cal. App. 362 [134 Pac. 339], under the provisions of section 182 of the Penal Code, which is the same section under which the prosecution in the instant case was maintained, the defendant was charged in two counts with having committed the crime of conspiracy. In the first count thereof the accusation was that the defendant and two others had conspired to commit a crime, to wit, to falsely accuse the named individual with having issued a check on a bank without having sufficient funds or credit at that bank to meet the check. As a part of the same transaction, the second count charged that defendant and said persons had conspired to pervert and obstruct the ends of justice by falsely charging the same person with the crime of drawing a check on a bank, knowing that he had not sufficient funds in it or credit at said bank to meet the check on its presentation.

Touching the point here in question, the court said, in part: "In this case the indictment neither charged two offenses, nor does it appear that the acts which were described in the first count were different from those described in the second. To do all of the things enumerated in the different subdivisions of section 182 of the Penal Code *amounts to a single offense only,* and it is quite plain that the district attorney might have joined in one count of his indictment all of the matters which were made the subject of the two counts. . . . ''

With reference to the two counts in the information in the case here being considered, it is clear that the basis therefor was a single transaction and involved but one conspiracy.

In the case of *United States* v. *Weiss,* 293 Fed. 992, in which one of the questions before the court was that of the right of the prosecution to charge several different criminal offenses where they arose out of one conspiracy, the following language appears:

"At the threshold it must be noted that the government cannot split up one conspiracy into different indictments, and prosecute all of them, but that prosecution for any part of a single crime bars any further prosecution based upon the whole or a part of the same crime. (*Murphy* v. *United States* (C. C. A.), 285 Fed. 804, at p. 816; *In re Snow,* 120 U. S. 274 [7 Sup. Ct. Rep. 556, 30 L. Ed. 658, see, also, Rose's U. S. Notes] ; 16 Cor. Jur. 270, and cases there cited.)"

Perhaps the same thought is expressed in *People* v. *Frank,* 28 Cal. 507, 513, where, in speaking of the crime of forgery, the court said: "Where, in defining an offense, a statute enumerates a series of acts, either of which separately, or all together, may constitute the offense, all such acts may be charged in a single count, for the reason that notwithstanding each act may by itself constitute the offense, *all of them together do no more,* and likewise constitute but one and the same offense. . . . "

See, also, *People* v. *Powell,* 50 Cal. App. 436, 438, 439 [195 Pac. 456].

And in the case of *People* v. *Jailles,* 146 Cal. 301 [79 Pac. 965], where it was charged in the first count of the information that by means of force and violence the defendant committed the crime of rape, and in the second count of the information the defendant was likewise accused of the crime of rape, by committing an act of sexual intercourse with the same person described in the first count, who at the time of the commission of the offense was under the age of sixteen years, the court held that the nature of the allegations of the information made it manifest that it was sought to charge but one offense and that an attempt had been made "to set forth the same transaction in different ways," and added that:

"All these allegations might undoubtedly have been joined in one count, for there is nothing inconsistent in them, or the second count might have been entirely omitted, for testimony showing the existence of the facts alleged therein would have been sufficient to sustain a conviction under the allegations of the first count (citing cases)."

To the same effect is the case of *People* v. *Eagan,* 116 Cal. 287 [48 Pac. 120].

Assuming that the authorities hereinbefore cited satisfactorily establish the conclusion that but a single transaction was involved in the aggregate of the allegations contained in both the first and the second counts of the information, and that the defendant therein was legally charged with the commission of but one offense, the question of the effect of the action of the trial court in granting the defendant probation as to the "first count" and sentencing her to state prison on the "second count" remains for consideration.

The case entitled *In the Matter of the Application of O'Connor,* 80 Cal. App. 647 [252 Pac. 730], is pertinent to the inquiry. With reference to the point involved, the court said:

"From this testimony it clearly appears that if the defendant was guilty as the jury found him to be, of larceny by trick and device as charged in the first count, he cannot also be punished under the fourth count. But one transaction occurred between the parties in connection with the subject matter which forms the basis of the prosecution upon these two counts. They not only relate to one and the same transaction, but the facts which constitute the larceny charge pleaded and established by the evidence are identical with those constituting the charge of obtaining money by false pretenses. Under such circumstances the jurisdiction of the court was exhausted when it pronounced sentence upon the verdict returned on the first count, and *habeas corpus* is a proper remedy where it is claimed that the prisoner has been placed in jeopardy for the identical offense, because if such assertion be true it is not merely a matter of defense which if not properly sustained in the trial court would furnish ground for appeal, but goes to the continuance of jurisdiction of the trial court for any purpose."

In the case entitled *In re Fink*, 79 Cal. App. 659 [250 Pac. 714], the defendant, who had been convicted of a felony, was granted probation, with the further order that he "be placed in the charge and under the supervision of the county probation officer, and requiring that he, the defendant, be placed and kept in the psychopathic ward of the county farm." Under the authority of *People* v. *Mendosa*, 178 Cal. 509 [173 Pac. 998], it was held that "the last requirement of the court's order was illegal," and that the defendant should be discharged from custody.

[2] The instant case, then, stands as though the defendant had been convicted of but one charge of conspiracy; that the trial court granted her application for probation thereon and at the same time sentenced her to state prison for the commission of the identical offense for the commission of which the defendant had been granted probation. In the Mendosa case (178 Cal. 509 [173 Pac. 998]) the judgment of the trial court was that the defendant be imprisoned in the state prison; that the sentence be suspended and the defendant remanded to the custody of the sheriff and confined in the county jail until the further order of the court; and while it was held therein that such a judgment was illegal in that there was no authority in law for the action of the court in suspending the execution of the sentence and at the same time remanding the defendant to the custody of the sheriff to be confined in the county jail, and consequently that such judgment should be reversed, it was also ruled that the defendant was not entitled to a new trial by reason of such error, but that the trial court should again arraign defendant for judgment and thereupon proceed to pronounce a proper judgment on the conviction legally obtained. The error, therefore, was not fatal in the sense that it was prejudicial to the substantial rights of the defendant. It did not have the effect of exhausting the jurisdiction of the trial court so as to prevent it from pronouncing a new or different judgment. And so in the case under consideration; it is manifest that on a conviction on what we have held was a single charge of conspiracy, the trial court had no authority to grant probation to the defendant and at the same time to sentence her to a term of imprisonment in the state prison. The court might have done either the one thing or the other, but clearly not both of them.

Like the judgment in the Mendosa case, the defendant could not be under a sentence to the state prison and at the same time be either released on probation or remanded to the custody of the sheriff to be confined in the county jail. The two respective conditions of the judgment are so opposed one to the other that neither is capable of enforcement without doing extreme violence to, if not destroying, the other. The result is as though no judgment had been rendered. However, reasoning from the decision in the Mendosa case, we are constrained to hold that the error committed by the trial court should not avail to the end that the release of the petitioner should be ordered. As is said in the *Matter of Smith*, 152 Cal. 566, 567 [93 Pac. 191, 192]; "It does not by any means follow that the prisoner must be discharged if the judgment and commitment are void, . . . The contention on the part of the prisoner that the sentence pronounced . . . is utterly void for the purpose of committing him to the state prison, but is nevertheless valid for the purpose of vacating the bench-warrant, and ending the felony case, is illogical in the last degree, and finds no support in the decisions which he cites." The intention of the trial court in the premises is perfectly clear, and petitioner has suffered nothing so far as her substantial rights are concerned by reason of the error on which the petition is predicated.

In disposing of petitioner "as the justice of the case may require" (sec. 1484, Pen. Code), and in accordance with the practice as indicated in the *Matter of Application of Lee*, 177 Cal. 690 [171 Pac. 958], *In re Bouchard*, 38 Cal. App. 441 [176 Pac. 692], and *In re Adams*, 61 Cal. App. 239 [214 Pac. 467], it is ordered that the writ be discharged, and that the petitioner be and she is remanded to the custody of the sheriff of the county of Los Angeles, with directions to the superior court to arraign petitioner for judgment and thereupon to proceed in the manner required by law.

Conrey, P. J., and York, J., concurred.