[Crim. No. 2164.  Second Appellate District, Division One.—March 25, 1932.]

THE PEOPLE, Respondent, v. HARRY H. O'BRIEN, Appellant.

148

Charles B. Hazelhurst and Webster Hazelhurst for Appellant.

U. S. Webb, Attorney-General, John L. Flynn, Deputy Attorney-General, Buron Fitts, District Attorney, and Tracy Chatfield Becker, Deputy District Attorney, for Respondent.

HOUSER, J.—Defendant pleaded guilty to one count in each of two separate informations by which he was charged with the crime of robbery. At the same time he also pleaded ''not guilty by reason of insanity''. By stipulation of the parties and by consent of the trial court, the two actions were considered and tried together. In each action the appeal is from the judgment of conviction which followed defendant's trial on the issue of his sanity, as well as from the denial of his motion for a new trial. A motion by

respondent for a diminution of the record is also presented.

As a ground for reversal of the judgments, it is urged by appellant that, as shown by the record herein, because on the hearing before the trial court no evidence whatsoever was introduced by the prosecution which tended to establish the sanity of defendant, but on the part of defendant a large volume of evidence was presented which tended to prove his insanity at the time when each of the crimes of which he was charged was committed, the trial court was without authority to judicially declare that at said time or times the defendant was sane. Conceding the fact that, as claimed by defendant, the effect of all the direct or circumstantial evidence adduced by him on the issue of his sanity was in favor of his contention, the question arises as to whether the legal presumption that all persons are presumed to be sane until the contrary is proved (14 Cal. Jur. 362; 10 Cal. Jur. 778, and authorities there respectively cited), in and of itself was sufficient not only to offset the evidence introduced by defendant, but as well was sufficient to support the conclusion reached by the trial court on the issue of the sanity of defendant. In that connection, an instructive and forceful argument in favor of defendant's contention is presented in the course of the opinion in the case of *State* v. *Brown*, 36 Utah, 46 [24 L. R. A. (N. S.) 545, 102 Pac. 641], where, in the latter report, it is held:

"The jury cannot disregard an overwhelming mass of uncontradicted evidence of insanity on the part of one accused of crime, and convict him on the legal presumption of sanity.

"The legal presumption of the sanity of one accused of crime is not sufficient evidence in support of a conviction to prevent a reviewing court from interfering with a verdict of guilty, where an overwhelming mass of uncontradicted evidence, which admits of but one conclusion, shows that accused was insane when the offense was committed."

In addition thereto, the editorial footnote attached to said authority contains the opening statement that: "The proposition that a defendant may be convicted of the crime charged notwithstanding there is a mass of uncontradicted evidence as to his insanity needs merely to be stated in order to show its unsoundness. Of course the question does

not, and in fact cannot, arise frequently. It is almost inconceivable that there would be no evidence at all to show sanity, or, at least, that a case would go beyond the trial court if the prosecution has nothing but the bare presumption of sanity on which to base its claim that the defendant was sane and consequently responsible for his acts. . . . ''

To the same effect are *Thomson* v. *State,* 78 Fla. 400 [83 South. 291]; *People* v. *Cochran,* 313 Ill. 508 [145 N. E. 207].

But the difficulty encountered in attempting to apply to the facts of the instant case the declarations of the law contained in the authorities to which attention has been directed is that both by statute of our own state, as well as by judicial decisions therein, a principle of law which in its effect is in direct conflict with that to which reference has been had is freely and positively announced. By the terms of subdivision 2 of section 2061 of the Code of Civil Procedure it is provided ''that they (the jury) are not bound to decide in conformity with the declarations of any number of witnesses, which do not produce conviction in their minds, against a less number *or against a presumption* or other evidence satisfying their minds; . . . ''

The opinion in the case of *Smellie* v. *Southern Pac. Co.,* 212 Cal. 540 [299 Pac. 529], contains an exhaustive review of the question of the probative force of a presumption of fact when opposed to direct evidence of the same fact to the contrary of such presumption. It is there held that (syllabus) ''a presumption is evidence, and may outweigh positive evidence adduced against it''.

As far as this court is concerned, the conclusion necessarily follows that the point presented by appellant cannot be sustained.

Prejudicial error by the trial court is urged by appellant in that on the trial of the issue the trial court refused to permit each or either of several witnesses introduced by defendant to express an opinion as to the ''mental sanity'' of defendant.

On the trial of an action, assuming the existence of a proper situation, there can be no doubt regarding the admissibility of opinion evidence of an intimate acquaintance respecting the ''mental sanity'' of a person, ''the reason for the opinion being given''. (Subd. 10, sec. 1870, Code

Civ. Proc.) Nor does it appear to be seriously questioned by the respondent herein that on the hearing of the issue the conditions required by the statute were substantially present. On examination of the testimony given by each of the several witnesses regarding the sanity of defendant, it is discovered that a unanimity of opinion was expressed in substance that at the time of the commission by defendant of each of the several crimes of which he was accused he either positively or probably was of unsound mind. But as to each of four witnesses, who were intimate acquaintances of defendant, it is contended by appellant that the trial court refused to permit a direct expression of opinion as to whether defendant was sane or insane. Specifically, as to one of such witnesses, after he had detailed certain "peculiar actions" of defendant and had stated in his opinion the defendant was "irresponsible", the trial court declined to permit the witness to give "an opinion as to his (defendant) knowing or comprehending right from wrong". As to a second witness, following statements that she had known defendant for a period of five years next theretofore preceding, during which time she had observed certain eccentric conduct of defendant, and had an opinion as to whether defendant was sane or insane, the trial court sustained an objection to a question propounded to the witness as to whether in her opinion defendant "knew right from wrong". In similar circumstances, although a third witness declared that he had "just surmised that he (defendant) was not quite aware of all the things he was doing", and that regarding the question of his sanity he formed an opinion, "which of course I kept to myself; but I didn't think he was quite responsible";—the witness was denied the privilege of expressing an opinion as to whether defendant "knew right from wrong". Likewise as to a fourth witness, who testified that she had "never thought him (defendant) mentally balanced";—the trial court refused to permit her to reply to the question of whether defendant "knew right from wrong".

It thus may be observed that, although generally each of the witnesses was permitted to express an opinion which, if not precisely, in a measure, was authorized by the provisions of the statute, he was not allowed specifically to state whether in his opinion defendant "knew right from

wrong". With reference to the legal propriety and admissibility of evidence of the nature of that which may be involved in the rejected testimony, the authorities of the several jurisdictions are not harmonious one with the other. In *State* v. *Porter*, 34 Iowa, 131, and *State* v. *Leehman*, 2 S. D. 171 [49 N. W. 3], it is held that on cross-examination the question as to whether a defendant "knew right from wrong" was admissible. Going further, in *Pflueger* v. *State*, 46 Neb. 493 [64 N. W. 1094] (overruling *Shults* v. *State*, 37 Neb. 481 [55 N. W. 1080], on the precise point), it was held that even on direct examination such a question was proper. To the same effect is *Carr* v. *State*, 24 Tex. App. 562 [5 Am. St. Rep. 905, 7 S. W. 328]. But to the contrary, see *State* v. *Palmer*, 161 Mo. 152 [61 S. W. 651, 657], where it is said:

"In the fifth place, the very point at issue was whether defendant could distinguish right from wrong in doing the act charged as criminal. This was for the determination of the jury, and an expert cannot be allowed, by answer to an improper question, to usurp the province and functions of the triors of the facts. (*Graney* v. *Railway Co.*, 157 Mo. 666 [50 L. R. A. 153, 57 S. W. loc. cit. 280]; Lawson, Exp. Ev., [2nd ed.] 172.) An expert witness cannot be asked his opinion as to whether the accused was capable of judging between right and wrong. (*Shults* v. *State*, 37 Neb. 487 [55 N. W. 1080]; *Reg.* v. *Layton*, 4 Cox, Cr. Cas. 149.) Nor to express an opinion that the accused acted under an insane delusion or was impelled by an irresistible impulse. (*Patterson* v. *State*, 86 Ga. 70 [12 S. E. 174].) And an expert witness may give his opinion as to the state of mind of the accused, but not as to his responsibility; that being a question for the jury. (*Reg.* v. *Richards*, 1 Fost. & F. 87; *Reg.* v. *Burton*, 3 Fost. & F. 772; *People* v. *Thurston*, 2 Parker, Cr. R. (N. Y.) 49; 1 Clevenger, Med. Jur. Insan., pp. 585, 586.) And it has been generally, if not universally, held, in cases where the objection has been made that the question covered the point in issue, that the experts cannot be asked the broad question whether they considered the person whose sanity is being litigated is out of his mind, or whether his mind was so affected as to be unfit to transact business (*Deshon* v. *Bank*, 8 Bosw. 461; *Chickering* v. *Brooks*, 61 Vt. 554 [18

Atl. 144]) ; or to give their opinions on the whole case, as it would necessarily include a determination of the facts. (*Negro Jerry* v. *Townshend,* 9 Md. 145; *Yardley* v. *Cuthbertson,* 108 Pa. 395 [56 Am. Rep. 218, 1 Atl. 765]; *In re McCarthy,* 55 Hun, 7 [8 N. Y. Supp. 578]; *People* v. *Lake,* 12 N. Y. 358; 1 Clevenger, Med. Jur. Insan., p. 542, and cases cited.) These authorities effectually show the incompetency of the question asked Dr. Davis as to what was the condition of defendant's mind on the day of the homicide.''

In this state the exact question has never been judicially determined. There are, however, a number of cases which in principle are in point and which in substance are to the effect that such a question invades the province of the jury in that it constitutes an attempt by the witnesss to determine the issue which consists of a mixed question of law and fact, which the jury only is authorized to consider and which is determinative of the ultimate fact or question before the court.

In the leading case of *Estate of Taylor,* 92 Cal. 564 [28 Pac. 603, 604], several of ·the authorities on the subject are reviewed. The question there under consideration was whether a qualified nonexpert witness might properly testify as to the capacity of a person to make a will. In ruling, the Supreme Court declared that, ''in allowing this witness to answer the question referred to, not only was the province of the jury invaded, but that of the court also, and the whole issue of law and fact was determined by the mere opinion of the witness.''

The rule there announced is followed in each of the following cases, to wit: *Estate of Sexton,* 199 Cal. 579, 770 [251 Pac. 778]; *Estate of Perkins,* 195 Cal. 699, 710 [235 Pac. 45]; *Estate of Schulmeyer,* 171 Cal. 340, 345 [153 Pac. 233]; *Langenbeck* v. *Louis,* 140 Cal. 406, 411 [73 Pac. 1086]; *In re Coburn,* 11 Cal. App. 604, 620 [105 Pac. 924].

In the case entitled *Estate of Schulmeyer,* 171 Cal. 340 [153 Pac. 233, 236], which was a guardianship proceeding in which a question of the competency of an individual was involved, a distinction was drawn by the court between the effect of testimony given by one witness that she ''had noticed Mr. Schulmeyer's inability to take care of himself'' (which statement was held inadmissible), and testimony

given by another witness that "he did not believe the appellant capable of going into any business proposition to any depth" (which statement was held admissible). The reason given by the court for its ruling was that: "This testimony (the latter statement) was not open to the objection which, as we have just said, should have excluded the opinion of Ethel Hanrahan (the first statement). It did not purport to pass upon the ultimate issue of competency or incompetency—an issue which involves questions of law as well as of fact. Expert witnesses may give their opinions concerning the mental condition of a person. They are not restricted to the mere declaration of an opinion that the person is or is not of sound mind, but may state the nature and extent of the deficiencies, if any, which they believe to exist. . . . "

Not only by the courts of this state, but as well by courts of other jurisdictions, wherein the rule obtains by which testimony of the nature of that here under consideration is denied admission, the universal reason assigned therefor is that such evidence trenches upon the province of the jury in that it permits a witness to decide the very question upon which the jury alone is qualified to pass judgment. It is a well-recognized principle of law that, as applied to criminal prosecutions, the defense of insanity of the defendant is narrowed to a question of whether at the time of, and solely with relation to, the commission of the particular offense of which he is charged, he was capable of distinguishing between right and wrong. (7 Cal. Jur. 862, and authorities there cited.) Having in mind the foregoing test, together with the question asked each of the witnesses as hereinbefore set forth, the effect of the situation would be the same as though the witness had been asked whether, admitting defendant was "irresponsible", or not "mentally balanced", etc., his mental condition was such that he should be held legally excusable for the commission of the criminal act for which he was then on trial. We think it manifest that the objection as to each of the questions asked of each of the several witnesses to which attention herein has been directed was properly sustained by the trial court.

As an additional reason for reversal of the judgments, appellant presents the point that, although he pleaded guilty to each of two of the offenses of which he

was charged, he was substantially prejudiced in his rights with reference to the determination of the degree of his crime or crimes by the method adopted by the trial court in making such decision in that no evidence whatsoever was adduced concerning such matter.

On the part of respondent it is not denied that in arriving at its conclusion with reference to the degree of the offense no evidence was directly received by the trial court; but in effect it is asserted by the respondent, and not denied by appellant, that following the application by defendant that he be placed on probation, a "report" was received in evidence by the court from the probation officer which contained a statement of the facts and circumstances which related to each of the robberies to which defendant pleaded guilty—which facts show that in the commission of each of the crimes a deadly weapon was used by defendant. In that connection, respondent contends that even though such evidence was hearsay, nevertheless it was received without objection by defendant, and that therefore it was competent and sufficient for the purposes of enabling the trial court to determine the degree of the offense, as provided by statute. (Sec. 1192, Pen. Code.)

Notwithstanding the fact that it has been decided that the hearing which may be conducted by the trial court for the purpose of determining the degree of the offense "is not a trial", nevertheless the only means by or through which the court is authorized to reach a conclusion in the matter is by the aid of evidence. (*People* v. *Chew Lan Ong*, 141 Cal. 551, 553 [99 Am. St. Rep. 88, 75 Pac. 186, 187]; *People* v. *Bellon*, 180 Cal. 706 [182 Pac. 420, 421].)

In the former case, where it appeared that on the hearing, by stipulation of the parties, the evidence taken on the preliminary examination of the defendant might be considered as though given at such hearing, in part it was said: "The universal aid is evidence. . . . It is the only means by which a judicial determination can be had, and was the means which it was contemplated by the legislature should be invoked by the court."

In the latter case, the following excerpt from the opinion therein is illustrative of the point: " . . . The appropriate and proper method for a court to pursue in such a case is to receive such competent evidence from the respective parties

as is material to the question of degree, and, the evidence having been concluded, to pronounce its determination thereon.''

In said case it also appears that on the hearing ''the defendant, without having been sworn as a witness, was examined by the district attorney and the court, both as to the circumstances of the crime and as to the things material to the statement required by section 1192a of the Penal Code to be sent to the clerk of the state prison in cases where a prisoner is to be punished by imprisonment therein. The examination of the defendant was intended to and did cover both these matters. No objection whatever was urged by either the defendant or his counsel to the course pursued in this matter. . . . ''

In effect, in each of the foregoing cases the Supreme Court held that the defendant was in nowise prejudiced by the irregular manner in which the hearing had been conducted.

A similar conclusion in a like proceeding was reached in the case of *People* v. *Hall,* 105 Cal. App. 359 [287 Pac. 533], where the error of which complaint was made consisted of the admission in evidence of extrajudicial confessions ''without a showing first being made that such confessions were free and voluntary''.

With reference to the weight and the sufficiency of hearsay evidence, in the case of *Lucy* v. *Davis,* 163 Cal. 611, 616 [126 Pac. 490], in substance it is held that when such evidence is received without objection the trial court is justified in accepting it, and that when so received it is a sufficient basis for the determination of an issue of fact. And in 22 Corpus Juris, 291, where authorities are cited in support of the doctrine, the rule is declared to be that, ''it is, however, the province of the jury to weigh such evidence and give it the consideration to which it is entitled (citing many authorities), and it may be sufficient to support a decision'' (citing one authority).

However, as between the facts which affect the situation in the instant case and those which appear to have been present in each of the authorities to which attention has been directed, a clear distinction may be marked in that in each of the latter a regular hearing was had; while in the instant case there was no hearing as such.. Neither

from the record herein, nor from the statements of respective counsel, does it appear that, other than the formal application by defendant for probation, coupled with the "report" thereon by the probation officer, any attempt was made by the trial court to ascertain the facts essential to a determination of the degree of the offense. Nor does it appear that at any time was. defendant afforded any opportunity to be heard in the matter; or even that he had any notice or knowledge of the fact that a hearing was to take place. It is not improbable that he made no objection to the admission in evidence of the "report" of the probation officer for the very good and sufficient reason that he was not aware that such "report" was offered in evidence in connection with the determination by the court of the degree of the offense committed by him. It would seem clear that in order to charge defendant with the consequences of his failure to object to the introduction of hearsay evidence, at least in some manner he should have been notified or apprised by the people of its intention to offer such evidence for the consideration of the trial court. Had defendant known that a hearing was in progress, and that in the determination by the trial court of the degree of the offense committed by defendant consideration would be given to hearsay evidence consisting of statements contained in the "report" by the probation officer, it is not impossible that if given an opportunity to do so he might have conclusively established the falsity of such statements and thereby, as well as by other evidence, have succeeded in convincing the trial court that the degree of his offense was less than that which, by the aid of such hearsay evidence, was determined by said court. It may not therefore be legally declared that the action of the trial court in the premises was not substantially prejudicial to the rights of defendant.

Appellant also registers objection by reason of the fact that the attempted determination of the degree of the offense occurred after, instead of before, the judgments were pronounced by the trial court.

Although by the terms of section 1192 of the Penal Code "the court must, before passing sentence, determine the degree", considering the fact as shown by the record herein that the passing of sentence and the determination

of the degree of the offense occurred practically simultaneously, we fail to see how or in what manner defendant could have been injured by the reversal in point of actual seconds of time of the two respective elements of procedure.

■ Appellant also urges the point that because in the circumstances present at the time in question failure of the trial court in pronouncing judgment to include therein an adjudication as to whether the two sentences imposed upon defendant should run concurrently, or should run consecutively, one with the other (sec. 669, Pen. Code), constituted such an infringement upon the substantial rights of defendant that on account thereof the judgment should be reversed.

It may be, as conceded by respondent, that considering the provisions of sections 669 and 670 of the Penal Code together, the necessary effect of the dereliction of the trial court in the premises would be that the two sentences imposed on defendant would run concurrently; in which event defendant would suffer no prejudice. That, however, is a question which, for obvious reasons, need not be determined at this time.

In the case of *In re Lee*, 177 Cal. 690 [171 Pac. 958], it is indicated that where it appears that an irregular judgment has been rendered by the trial court, the proper method of correction thereof is by an order by that court returning the defendant to the trial court in order that a proper judgment may be pronounced. To the same effect, see *In re Fritz*, 179 Cal. 415 [177 Pac. 157]; *In re McCready*, 179 Cal. 514 [177 Pac. 459]; *People* v. *Marshall*, 209 Cal. 540 [289 Pac. 629]; *Ex parte Carrera*, 36 Cal. App. 817 [172 Pac. 979]; *People* v. *Votaw*, 38 Cal. App. 714 [177 Pac. 485]; *People* v. *Scott*, 39 Cal. App. 128 [178 Pac. 298]; *People* v. *Gibson*, 45 Cal. App. 770 [188 Pac. 603]; *In re Nichols*, 82 Cal. App. 73 [255 Pac. 244]; *In re Otto*, 84 Cal. App. 186 [257 Pac. 880].

■ Misconduct of the deputy district attorney in charge of the prosecution of defendant is also relied upon by appellant as a reason for a reversal of the judgments. Without herein setting forth the details of the circumstances of which appellant complains, it may suffice to state that in the opinion of this court, although the alleged misconduct constituted error, nevertheless, the situation considered, it was

not of that serious character and importance which would justify this court in directing a reversal of the judgments.

In each appeal it is ordered that the order denying the motion for a new trial be and it is affirmed. Each of the judgments is affirmed, subject, however, to further determination of the degree of the several crimes. It is further ordered that defendant appear before the superior court for the purpose of having determined the degree of each of the crimes of which he pleaded guilty, and thereafter that in each action a new judgment be pronounced against him. And it is further ordered that the motion presented by respondent for a diminution of the record herein be, and it is, denied.

Conrey, P. J., and York, J., concurred.