[No. F018939. Fifth Dist. Jan. 20, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
MIGUEL ANGEL LOPEZ, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I, IIIA, IIIB and IV.

**COUNSEL**

Michael L. Sprague for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Edmund D. McMurray and J. Robert Jibson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**VARTABEDIAN, J.**—Appellant Miguel Angel Lopez appeals from a judgment after jury verdict convicting him of three conspiracy counts. He raises issues concerning admission of evidence, and he contends the evidence is insufficient as to two of the counts. We reject his specific claims; however, we reverse counts two and three for the related reason that the evidence demonstrated but one prosecutable conspiracy offense.

### FACTS AND PROCEEDINGS

Ephedrine is a precursor chemical used in one method of manufacturing methamphetamine. In March 1992, an informant introduced Isaias Flores to Robert Castaneda, an undercover sheriff's deputy, who offered Flores a large quantity of ephedrine. After negotiations and failed attempts to purchase the

ephedrine throughout the spring of 1992, Castaneda tentatively agreed with Flores to provide the ephedrine in return for a portion of the 40 pounds of methamphetamine the ephedrine would produce.

As the time for transfer of the ephedrine and manufacture of the methamphetamine neared, Flores put Castaneda in contact with appellant. In a June 6, 1992, tape-recorded telephone conversation, appellant told Castaneda the manufacturing site was ready for Castaneda's inspection. On June 9, 1992, appellant and Castaneda reached final agreement for transfer of the ephedrine. On June 10, 1992, Flores met Castaneda at a restaurant, then called appellant.

Appellant and two other men arrived at the restaurant. Appellant and Castaneda discussed the time it would take to manufacture the methamphetamine, and appellant reassured Castaneda matters would go smoothly. Appellant then opened the trunk of his rental car and one of the other men loaded the ephedrine. On a signal from Castaneda, appellant, Flores and the other men were arrested. One of the other men arrested was Leonardo Lizzaraga, who was tried with appellant.

The jury found appellant guilty as charged: conspiracy (Pen. Code, § 182) to manufacture methamphetamine (Health & Saf. Code, § 11379.6, subd. (a)) (count one); conspiracy to illegally dispose of hazardous substances in violation of Health and Safety Code sections 11374.5, subdivision (a) and 25189.5, subdivision (b) (count two); and conspiracy to possess methamphetamine for sale (Health & Saf. Code, § 11378) (count three). The jury could not reach a verdict as to Lizzaraga. The court sentenced appellant to the upper term of seven years on count one and to concurrent terms on the other two counts.

## DISCUSSION

### I. *The Telephone Conversation: Nonhearsay**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### II. *Expert Testimony: Not Improper, "Profile" Evidence*

Over defense objections, a state narcotics agent, Robert Pennal, testified concerning the general organization of methamphetamine manufacturing rings. As aptly summarized by appellant, Pennal testified "that the manufacturing and distributing of methamphetamine was initially monopolized by

---

*See footnote, *ante*, page 1551.

the white biker groups, particularly the Hell's Angels, and that in the latter part of the 1980's a shift occurred to the Mexican National and Hispanic groups who now control the manufacture of methamphetamine. [Citations.] [¶] Pennal then launched into a long discourse as to the profiles of a meth laboratory, describing workers, cookers, buyers, financiers and their roles as to when they appear in the manufacturing process, etc. [Citations.] [¶] In particular, Pennal discussed the roles of the late arrivals in the manufacturing process."

 Appellant has two complaints with the admission of this testimony. First, it "amounted to profile testimony prohibited by *People v. Martinez* (1992), 10 [Cal.App.] 4th 1001 [12 Cal.Rptr.2d 838]." Second, the testimony constituted "racial stereotyping of methamphetamine manufacturers . . . [which] allowed the jury to determine appellant's guilt based upon racial association alone."

In *People* v. *Martinez* (1992) 10 Cal.App.4th 1001 [12 Cal.Rptr.2d 838], the defendant was arrested driving a stolen truck. The truck had been "cold-plated" (i.e., the original license plates had been replaced with plates that had not been reported stolen) and defendant possessed an apparent certificate of registration, which in fact was a high-quality forgery. (*Id.* at p. 1003.) The defendant claimed he had bought the truck through a private party, and that he did not know it was stolen. (*Ibid.*)

At the *Martinez* trial, the prosecution was permitted to introduce testimony of highway patrol vehicle-theft investigators concerning theft rings that transported stolen vehicles to Central America. (*People* v. *Martinez, supra*, 10 Cal.App.4th at pp. 1004-1005.) "[T]he clear thrust of the evidence was to establish that defendant 'fit' a certain 'profile.' " (*Id.* at p. 1006.) The court held: "[T]his type of evidence is inherently prejudicial. While the similarities may be a proper consideration for law enforcement in investigating criminal activity, they are inappropriate for consideration on the issue of guilt or innocence for the very reason given in the drug courier profile cases: the potential of including innocent people as well as the guilty." (*Ibid.*) *Martinez* relied upon federal "drug courier profile" cases and California "other crimes evidence" cases in reaching its conclusion.

Not all testimony concerning general patterns of criminal activity is "profile" testimony. "Profile evidence is a 'point by point examination of profile characteristics' that enable[s] the investigator to justify pursuing the matter." (*U.S.* v. *Robinson* (10th Cir. 1992) 978 F.2d 1554, 1564.) "[B]ecause of the limited usefulness of profiles, courts have declared testimony concerning the defendant's alignment with a particular profile incompetent as direct evidence of guilt." (*Ibid.*)

By contrast, background testimony is not "profile" evidence and does not specifically address the guilt or innocence of the defendant. Instead, it enables the jury to understand other evidence that does address guilt or innocence. (*U.S.* v. *Robinson, supra*, 978 F.2d at p. 1564; *id.* at p. 1569 (dis. opn. of Seth, C. J.) ["The analysis of whether the gang affiliation evidence in this case was improperly admitted requires determining (1) whether the evidence was 'profile' evidence, and (2) whether the profile was offered as substantive evidence of guilt"].) Thus, in a prosecution for possession of cocaine for sale, the evidence might show recovery of only a small amount of the drug at defendant's house together with recovery of a large number of small plastic Baggies. A police officer with appropriate expertise may be allowed to testify that cocaine is sold in small plastic Baggies in order to explain the meaning of the evidence itself. (See *U.S.* v. *Dunn* (D.C. Cir. 1988) 846 F.2d 761, 763 [269 App.D.C. 373].)

This distinction exists in California law as well. In *People* v. *Harvey* (1991) 233 Cal.App.3d 1206 [285 Cal.Rptr. 158], upon which respondent relies, a police expert was permitted to testify in detail concerning the organization and methods employed by Colombian cocaine rings. He then testified as to the meaning of evidence in the case against the backdrop of the organizational structure and methodology. (*Id.* at pp. 1216-1217.)

The court held that permitting this expert testimony was not error. When "the subject matter [of the expert testimony] was sufficiently beyond the common expertise of the trier of fact to render expert testimony not only helpful but necessary for an understanding of the meaning and import of various actions" established by other evidence, it is within the trial court's discretion to permit such testimony. (*People* v. *Harvey, supra*, 233 Cal.App.3d at p. 1228.)

 In the present case, the testimony served only as background information that allowed the jury to understand the complex cast of characters and events that comprised this months-long conspiracy. The court did not abuse its discretion in permitting the expert testimony.

Appellant additionally argues, in passing, that Pennal's testimony that Hispanics took over the methamphetamine business from "white motorcycle clubs" in the late 1980's invited the jury to convict appellant simply because he is Hispanic. We glean no such invitation from this brief reference in Pennal's testimony. Further, we note that the jury was unable to reach a verdict as to Lizzaraga, who also is Hispanic.

III. *Sufficiency of Evidence*

 A., B.*

. . . . . . . . . . . . . . . . . . . . . . . . . .

 C. *Evidence of a Single Conspiracy*

██ As summarized at 1 Witkin and Epstein, California Criminal Law (2d ed. 1988) Elements of Crime, section 163, at page 181, "One agreement gives rise to only a single offense, despite any multiplicity of objects." Thus, section 182, subdivision (a) of the Penal Code provides, in part: "If the felony is conspiracy to commit two or more felonies which have different punishments and the commission of those felonies constitute but one offense of conspiracy, the penalty [for the conspiracy] shall be that prescribed for the felony which has the greater maximum term."

 In *In re Nichols* (1927) 82 Cal.App. 73 [255 P. 244], the conspirators enticed a man into a rented room with defendant, accosted him, threatened him with suit for alienation of the defendant's affections, and hired an attorney to file the suit. The conspirators were charged in two counts: conspiracy to commit the crime of extortion and conspiracy to falsely maintain a lawsuit. The defendant was convicted of both counts. She was sentenced to prison on count two and placed on probation on count one.

 After reviewing the evidence and the information, the *Nichols* court found, "With reference to the two counts in the information in the case here being considered, it is clear that the basis therefor was a single transaction and involved but one conspiracy." (*In re Nichols, supra,* 82 Cal.App. at p. 79.) The court also quoted with approval from *United States* v. *Weiss* (N.D. Ill. 1923) 293 Fed. 992, as follows: " 'At the threshold it must be noted that the government cannot split up one conspiracy into different indictments, and prosecute all of them, but that prosecution for any part of a single crime bars any further prosecution based upon the whole or a part of the same crime.' " (82 Cal.App. at p. 79) Then quoting the state Supreme Court in *People* v. *Frank* (1865) 28 Cal. 507, 513, the *Nichols* court added, " 'Where, in defining an offense, a statute enumerates a series of acts, either of which separately, or all together, may constitute the offense, all such acts may be charged in a single count, for the reason that notwithstanding each act may by itself constitute the offense, *all of them together do no more*, and likewise constitute but one and the same offense . . . .' " (82 Cal.App. at p. 79)

 The *Nichols* court concluded defendant could be convicted of only one conspiracy count: "The instant case, then, stands as though the defendant

---

*See footnote, *ante*, page 1551.

had been convicted of but one charge of conspiracy; that the trial court granted her application for probation thereon and at the same time sentenced her to state prison for the commission of the identical offense . . . ." (*In re Nichols, supra,* 82 Cal.App. at p. 81.) The judgment was reversed and the trial court was directed to rearraign defendant for judgment and to impose only one sentence. (*Id.* at p. 82.)

In *People* v. *Nasworthy* (1949) 94 Cal.App.2d 85 [210 P.2d 83], defendant was charged and convicted in two conspiracy counts arising from enticing a woman to be a prostitute. The defendant contended on appeal that the first count failed to allege an overt act. The court summarized the state of the law: "[T]he gist of the offense of conspiracy is the conspiracy 'which is single, although the object is to commit several crimes.' [Citations.]" (*Id.* at p. 89.) The court concluded that since only one crime was charged, the absence of an overt act allegation in the first count was remedied by the sufficient allegation of an overt act in the second count. (*Ibid.*)

In *People* v. *Skelton* (1980) 109 Cal.App.3d 691 [167 Cal.Rptr. 636], disapproved on other grounds in *People* v. *Figueroa* (1986) 41 Cal.3d 714, 731-732 [224 Cal.Rptr. 719, 715 P.2d 680], the defendant argued that although he was convicted of only one conspiracy, there were in fact two conspiracies involved in the sophisticated securities fraud transactions. Defendant wanted the jury instructed that it had to determine whether there were one or two conspiracies, with the various acts and statements of the conspirators attributable only to the appropriate conspiracy and coconspirators.

The court concluded that the evidence showed only one "overall scheme." "The test is whether there was one overall agreement among the various parties to perform various functions in order to carry out the objectives of the conspiracy. If so, there is but a single conspiracy." (*People* v. *Skelton, supra,* 109 Cal.App.3d at p. 718.)[2]

As reiterated throughout respondent's brief, all three of the charged crimes were for one ultimate purpose, sale of methamphetamine for financial gain. All of the acts in each of the three target crimes were incidental to this

---

[2]*People* v. *McLead* (1990) 225 Cal.App.3d 906 [276 Cal.Rptr. 187], cited in respondent's supplemental letter brief, discusses a multiple-conspiracy issue involving a murder and two attempted murders. In that case, the court borrowed heavily from cases concerning whether solicitation for multiple murders comprised one or more crimes. In the same way multiple victims of related violent crimes alter the analysis under Penal Code section 654, similar considerations permit multiple solicitation charges based on the number of intended victims, although there is conflicting case law. (Compare *People* v. *Davis* (1989) 211 Cal.App.3d 317, 322-323 [259 Cal.Rptr. 348] with *People* v. *Morocco* (1987) 191 Cal.App.3d 1449, 1453-1454 [237 Cal.Rptr. 113].) Accordingly, *McLead* sheds no light on the present case, where there was no particularly identifiable victim of any of the charged crimes.

objective, and many acts were a direct part of more than one of the crimes.Under these circumstances, but one count of conspiracy can be sustained.

IV. *CALJIC 2.90**

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is affirmed as to count one. The judgment as to counts two and three is reversed.

Stone (W. A.), Acting P. J., and Buckley, J., concurred.

---

*See footnote, *ante*, page 1551.